[Sac. No. 2290. Department One.—June 29, 1917.]

ANNIE M. WILLIAMS, Appellant, v. ARTHUR D. LOCKWOOD, Executor of the Last Will of Arthur R. Briggs, Deceased, et al., Respondents.

AGENCY—SALE FROM PRINCIPAL TO AGENT—FAIRNESS OF TRANSACTION— DUTY OF AGENT.—In an action to set aside a sale of real property made by a principal to an agent, where the latter obtains any benefit through the transaction, the burden is upon him to show that an adequate consideration was paid, and that no unfair means of any kind were used by him to induce the sale.

ID.—DISAFFIRMANCE OF SALE—ADEQUACY OF PRICE.—While a principal has the right to disaffirm a sale to his agent if there is any element of unfairness or bad faith, even though the purchase price is adequate, nevertheless price is a highly important factor in such cases.

ID.—VALIDITY OF SALE—SUFFICIENCY OF EVIDENCE.—In an action to set aside a sale. of real property made by a principal to her agent on the ground of fraud, where a full and fair price is paid for the property, and it is shown that the agent had acted as such agent for a period of ten years with the strictest good faith, and that the action was not brought until long after the transaction and death of the grantee, clear and satisfactory proof is required to show that the sale was procured by fraud.

APPEAL from a judgment of the Superior Court of Butte County, and from an order denying a new trial. John F. Ellison, Judge Presiding.

The facts are stated in the opinion of the court.

Bishop, Hoefler, Cook & Harwood, and Alfred J. Harwood, for Appellant.

Frank H. Short, A.. E. Bolton, and Carlton Gray, for Respondents.

Walter H. Linforth, *Amicus Curiae.*

SLOSS, J.—The plaintiff brought this action to set aside a sale of real property made by her to Arthur R. Briggs. Briggs died after the consummation of the transaction, and the suit was brought against the executors of his will and the beneficiaries named therein.

The plaintiff, and her brother, Orville Pratt, had succeeded, upon the death of their grandfather, O. C. Pratt, to the ownership of considerable property in Butte and Glenn Counties, and elsewhere, in this state. Up to 1899, or thereabouts, the plaintiff lived in California, but in that year she was married to Dr. Carl Williams, and thereafter resided with him in Philadelphia. From about 1897, Briggs had been the confidential adviser of the plaintiff, and had had charge and management of the property which had come to her and her brother from the estate of O. C. Pratt. Their holdings were seriously involved. In the course of years, Briggs succeeded in selling parts of the land, and used the proceeds to pay indebtedness, until there remained, free of all encumbrance, a tract of 2,560 acres of land in Butte County, and a somewhat smaller tract in Glenn County. Orville Pratt died, leaving a will by the terms of which one-tenth

of his interest in these lands passed to the plaintiff. Briggs was the executor of this will.

The agreement of sale which is the subject of attack in this action was made in February, 1909. By it the plaintiff agreed to sell to Briggs, for the sum of twenty-five thousand dollars, her interest (eleven-twentieths) in the 2,560 acres of land in Butte County, together with her interest in a certain warehouse, valued at six hundred dollars. The purchase price was made payable in five years from the date of the agreement, with interest at the rate of six per cent, the purchaser meanwhile to have possession of the land. Payment was, however, completed, and a conveyance made, in June, 1910, fifteen months after the making of the contract. In October, 1910, Briggs died, and this action was instituted in August, 1911.

The complaint, after setting forth many of the foregoing facts, alleges that Briggs induced the plaintiff to make the sale to him by various kinds of misconduct, misrepresentation, and concealment. It is alleged that Briggs represented to the plaintiff that twenty-five thousand dollars was the value of said property, but that, in fact, said property was then worth thirty-six thousand two hundred dollars, as Briggs well knew, and that it has since increased in value to the sum of fifty thousand dollars. The particulars of the charges of unfairness need not here be detailed, as we shall have occasion to refer to them in our further discussion.

The court found the confidential relation, as alleged in the complaint. It found, however, that Briggs did not induce the plaintiff to enter into the agreement of sale, but that he consented to become the purchaser ''by reason of the apparent determination of the plaintiff to then sell and dispose of said lands.'' It is found that the property was not, on the first day of February, 1909 (the date of the agreement of sale), of any greater value than twenty-five thousand dollars, and that Briggs did not conceive the design or intent of purchasing the plaintiff's property at less than its value. The court found, further, that plaintiff was not, at the time she agreed to sell, ignorant of the value of the property; that Briggs explained to her that, in his opinion, it was not an advantageous time to sell said property; but plaintiff, acting against his advice, expressed a purpose to sell, and Briggs was induced thereby to make the purchase at the then market

value of the property. It is found that the consideration paid by him was a full and fair one. There are various specific findings, followed by a general one that "the transaction was in all respects a reasonable, fair, and just transaction, and said Arthur R. Briggs made no false representations to the plaintiff, nor did he conceal any of the facts or circumstances from her, or deal unfairly with her." There is a further finding to the effect that when plaintiff made the contract, or soon thereafter, she was in a position to know all the facts now relied upon by her, and that she should have acted with more promptness. Judgment went in favor of the defendants, and the plaintiff appeals from the judgment, and from an order denying her motion for a new trial.

The relation of principal and agent, which (as is conceded) existed between the plaintiff and Briggs, is fiduciary in character. The acts of the agent are judged with almost, if not quite, the same strictness as those of a trustee. Where he deals with his principal, and obtains any benefit through the transaction, the law throws upon him, as upon a trustee, the burden of showing that an adequate consideration was paid, and that no unfair means of any kind were used by him to induce the contract. (2 Pomeroy's Equity Jurisprudence, sec. 959; Mechem on Agency, sec. 1221; *Rubidoex* v. *Parks*, 48 Cal. 215; *Sterling* v. *Smith*, 97 Cal. 343, [32 Pac. 320]; *Burke* v. *Bours*, 98 Cal. 171, [32 Pac. 980].)

The principal's right to disaffirm a sale to his agent is not defeated by a showing, merely, that the agent paid the full value of the property. If there was any element of unfairness or bad faith, the sale may be avoided, even though the purchase price appear to have been adequate. But the obtaining of the trusting principal's property for less than it was fairly worth is certainly a highly important factor in such cases, and without it, the principal's application for relief makes a less persuasive appeal to the discretion of the chancellor. Here the complaint alleged that the property at the time of the sale was worth considerably more than the twenty-five thousand dollars agreed to be paid (and subsequently paid) by Briggs. The court found, however, that the consideration paid was the full and fair value of the property at the time. The appellant seeks to attack this finding as contrary to the evidence. The effort cannot, however, be sustained. There was a sharp conflict on the question of

value, and a number of qualified witnesses gave testimony justifying the finding of the court. The appellant lays great stress upon the fact that one of her witnesses testified that land sold on five years' time, with interest at the rate of six per cent, the purchaser to have possession, should bring ten dollars an acre more than if sold for cash. It is said that this testimony was not directly contradicted. But the opinion of the witness was a very general one, expressed without reference to the circumstances or to the condition of the contracting parties. The respondents introduced evidence to show that, at the time of the sale, Mr. Briggs was a man of considerable wealth and of high financial standing, and that his unsecured obligation, bearing interest at the rate of six per cent, could have been sold at par. If the opinion of plaintiff's witness was entitled to any particular weight, we think the court could properly consider it offset by the evidence of the value of Briggs' promise to pay.

Starting, then, with the premise that Briggs paid a full and fair price for the land, we must inquire whether the evidence supports the specific and general findings of the court to the effect that Briggs did not make any false representations to the plaintiff, or conceal any facts from her, or deal unfairly with her.

It is argued that Briggs took an unfair advantage of the appellant in failing to follow her instructions as to a partition of the property. The record contains a voluminous correspondence between the parties. Mrs. Williams had repeatedly expressed a desire that the property be divided into separate interests, and Briggs had declared his intention to take steps to this end. Later on, however, he wrote to the appellant a letter in which he stated that a further study of the situation had convinced him that her interests "would not be served well by making the partition suggested." He gave his reasons for this conclusion. We think the trial court was justified in believing that these reasons were sound, and that Briggs was acting in good faith. The court found that Briggs conscientiously advised the plaintiff in connection with the matter of partitioning the said property, and that he took no advantage whatever of her in connection with such partition. It cannot be said that these findings are contrary to the evidence. The record does not compel an inference that plaintiff's position would have been better if a part of

the land had been held by her in sole ownership, or that the sale to Briggs was influenced by the fact that she held an undivided interest.

Much is made of the point that Briggs informed the plaintiff that the property was appraised at a sum which made her interest worth twenty-five thousand dollars. An appraisement corresponding with this representation had been made in the estate of Orville Pratt, the plaintiff's brother, and no later appraisement had been made when Briggs made the statement. It appears, however, that before the sale was concluded, there was a new appraisement in the Orville Pratt estate, and in this the value of the property was put at a figure which would make the plaintiff's interest worth something over twenty-eight thousand dollars. Briggs did not advise plaintiff of this new appraisement, and his failure to so advise her is relied upon as a circumstance showing unfairness and bad faith on his part. The court found that Briggs did not deceive or mislead the plaintiff in this respect. The finding is not without support in the evidence. It is true that the record shows that the new appraisement was made on January 30, 1909, two days before the date of the agreement of sale between the plaintiff and Briggs. But it does not appear when the appraisement was returned to the court, and there is no direct evidence that Briggs knew of the new appraisement before the consummation of his negotiations with the plaintiff. The inventory was sworn to by Briggs on January 30th, the same day on which the appraisers verified their bill of charges. Both oaths were taken before the same notary. It may be that these facts would have justified an inference that Briggs knew of the appraisement. But the inference is not a necessary one. Under our probate practice the making of the inventory is the act of the executor, and it ordinarily precedes the appraisement. It is quite possible that Briggs may have sworn to the inventory, and then have turned the matter over to the appraisers for their action. In view of the fact that no claim was made against Briggs during his lifetime, and that he could not testify at the trial, we think the court was justified in making its finding in accord with the presumption that fraud or wrong had not been committed.

Another circumstance charged against Briggs, and perhaps the most serious one, is that he used his influence to hinder a

possible sale of the property to one Roscoe. Roscoe had had some talk with the plaintiff about a possible purchase of the property, and he had been referred to Briggs. After examining the property he visited Briggs, who, as he testified, spoke in such a way as to discourage a purchase by Roscoe. Shortly thereafter Mrs. Williams came to California and discussed the matter with Briggs, who then told her that a sale to Roscoe would not be advantageous. It is claimed that Briggs used his influence to prevent a sale to Roscoe, in order that he might buy the land himself for a smaller price. But, while the death of Briggs made it impossible to furnish a satisfactory explanation of his attitude in this matter, there is some reason to believe that he may have had good grounds for thinking the proposed sale to Roscoe undesirable. The testimony regarding the negotiations between the plaintiff and Roscoe is by no means clear. Roscoe had never made any binding agreement to buy, and there is a good deal of uncertainty in the testimony regarding the price which he might have been willing to give. The plaintiff's letters show her to have been well aware of her own interests. If she had a prospect of obtaining from Roscoe a price in excess of that offered by Briggs, and there was no other deterring factor in the possible sale, it is hardly likely that she would have accepted, without question, Briggs' unexplained statement that the sale to Roscoe would not be advantageous. On the whole case the court was justified in concluding that this circumstance did not afford a sufficient basis for setting aside the sale and conveyance to Briggs.

The appellant claims that she had no independent advice in the transaction. But, under the circumstances of this case, we do not think that such advice was essential. The findings, which are fully supported in this respect, show clearly that the plaintiff had a very good idea of the value of her property; they state, further, that Briggs advised her that a sale at that time would not be in her best interest, and that the property would probably increase in value within a reasonable time. If, notwithstanding these suggestions, she remained determined to sell, it is hardly probable that the advice of any third person would have altered her intention.

We have already referred to the finding bearing upon the plaintiff's want of promptness in disaffirming the transaction. We do not hold that this is a finding of laches. But the long

delay, during which the value of the property increased
greatly, together with the fact that Briggs had died before
any complaint was made by plaintiff, were circumstances
bearing upon the equity of the plaintiff's case. The learned
trial judge evidently felt, after hearing all the witnesses and
reviewing the entire situation, that plaintiff had not made
out a case which would justify the upsetting of a transac-
tion entered into so long before. In the opinion filed in the
lower court, and included in the transcript, we find these
passages, in which are well stated the broad equitable consid-
erations which led to the rendition of the judgment, and
which should lead to its affirmance here:

"In considering the case for the plaintiff, the court is not
unmindful of the fact, and deems it its duty to give it its
proper weight, that after the contract of sale was made to Mr.
Briggs for the land in dispute some fifteen months elapsed
before the deed was executed to Mr. Briggs by the plaintiff,
that some six months thereafter Mr. Briggs died and that
this suit was not brought for some nine months after the
death of Mr. Briggs. This leaves the case in the position
that one of the parties to the transaction, and whose version
of it, if presented to the court, might materially modify the
case as made, is dead, and that his testimony cannot be ob-
tained, and that anything presented by plaintiff and her
witnesses is not subject to contradiction or modification by
having presented to the court the version of the other party
to the transaction.

"After a man has acted as the confidential business agent
of another for a period of ten years with the strictest of good
faith, with energy, and with a careful eye to the interests of his
principal, rendering full, complete, and, so far as appeared,
accurate accounts of all financial transactions it should re-
quire, it seems to me, very clear and satisfactory evidence to
cause the court to hold that all of a sudden, in a very short
space of time, and in contradiction to his entire attitude to his
principal consistently maintained for a period of ten years,
he faces about, and by fraud and chicanery concludes to de-
prive his principal of her property without paying her a full
and adequate consideration therefor. It is the opinion of the
court that such satisfactory showing has not been made in
this case."

When, in addition, it appears that the price paid for the property was a full and adequate consideration, it must be held that the suspicious circumstances claimed to be shown were not of sufficient force to require the court to put the stamp of fraud upon the transaction.

The alleged errors in the rulings on the admission of evidence are of small consequence. The court excluded a memorandum made by Briggs in October, 1910, in which he placed the value of the land purchased by him from the appellant at fifty thousand dollars. This was over a year and a half after the purchase. The declaration would be entitled to little weight on the issue of the value of the land in February, 1909. It was clearly shown that the value had increased rapidly in the interval. Under the circumstances, the exclusion of the evidence, assuming its materiality, was not substantially prejudicial. It is claimed that the court erred in not permitting the plaintiff to testify that Mr. Lockwood, the executor of Briggs' will, and one of the defendants here, had told her, after his testator's death, that Briggs "had not treated her quite right." Mr. Lockwood himself had already testified that he had on this occasion told Mrs. Williams that it was a great pity that she had sold the property, and that Mr. Briggs had done a good thing for himself when he bought it. The additional testimony sought to be introduced could not have added anything of substantial value to the plaintiff's case.

The judgment and the order denying a new trial are affirmed.

Shaw, J., and Lawlor, J., concurred.

Hearing in Bank denied.