[Civ. No. 5860.   Second Appellate District, Division Two.—December 4, 1928.]

STELLA M. FRELIGH, Appellant, v. SUSAN McGREW et al., Respondents.

Arsen Yeretzian for Appellant.

Stephen Monteleone for Respondents.

KEETCH, J., *pro tem.* — The plaintiff and appellant brought an action in the municipal court of Los Angeles County to recover the sum of $1,000 paid by her in a transaction involving the leasing of an apartment house in the city of Los Angeles, owned by the defendant Mrs. Susan B. McGrew. Judgment went for the plaintiff and defendant appealed to the superior court. The matter is now before us on appeal from a judgment of reversal rendered by the superior court.

It appears from the facts contained in the statement submitted to the superior court on appeal that about September 9, 1924, Mrs. Freligh began negotiations for the leasing of the McGrew Apartments through Mrs. McGrew's agents, R. J. Frank and J. M. Schisler, co-defendants named in the complaint. The term of the proposed lease was for ten years, at a monthly rental of $500, unfurnished, the first and last months' rent to be paid in advance. The premises were under lease at the time to a Mrs. Craig, and she owned the furniture. It is claimed by the plaintiff that prior to the execution of the lease on September 14, 1924, Frank and Schisler, as the agents of Mrs. McGrew, made certain promises of assistance to her, the plaintiff, in order to close the deal, including an offer of a loan of $500 with which to complete the purchase of the furniture from Mrs. Craig. The lease was prepared and plaintiff submitted it to her attorney, who made several objections to it. Another lease was presented to the plaintiff for her signature and it is claimed by her that Frank and Schisler stated that it had been corrected to conform to her wishes. She signed it without reading it and without again submitting it to her attorney. This fact is admitted by her. Shortly after she discovered that Mrs. Craig had disposed of the furniture, and at about the same time she also discovered that one of the clauses in the lease to which she particularly had objected, requiring the giving of a chattel mortgage upon the furniture to secure the rent, had not been changed or eliminated. These statements of the plaintiff are specifically denied by the defendants, they asserting that Mrs. Freligh's

negotiations for the purchase of the furniture from Mrs. Craig was an independent transaction unknown to Mrs. McGrew and had nothing whatever to do with the execution of the lease—that as to the latter the plaintiff had signed it with full knowledge of its contents. Whatever conflict there may be in these particulars it is undisputed that the lease was executed by the parties, that the receipt of the $1,000 for the first and last months' rental is acknowledged therein and that plaintiff took possession of the premises and occupied them for several months thereafter.

The complaint consists of two counts, one in the nature of the common count for money had and received and the other a recital of the contentions of plaintiff as briefly outlined above and in effect charging that the signature of the plaintiff to the lease was procured by means of false representations. In reversing the judgment the lower court held as to the first count that in order to maintain an action for money had and received, when paid under an alleged fraudulent contract, there must have been a rescission of the contract in accordance with the requirements of sections 1689 and 1691 of the Civil Code, and that there was nothing in the record to indicate that that had been done; hence, that the finding of the trial court was erroneous. It is the contention of the appellant here that under the facts as stated there was no need for rescission, because the money was obtained under false representations. In support of this claim counsel relies chiefly upon the language of the court in *Minor* v. *Baldridge,* 123 Cal. 191 [55 Pac. 785]. In that case it appears that Baldridge, as representative of the California, Oregon & Idaho Railway Company, entered into a contract with the plaintiff by which the latter agreed to pay $20,000 in six installments to the corporation, in connection with the building of a proposed railroad, conditioned upon the corporation's building the road up Mad River and to purchase lumber from the plaintiff. Some time after the contract was signed Baldridge represented that the terminal had been secured on Humboldt Bay and that the first installment of the money was due. The plaintiff, relying upon this statement, paid over $1,000 to the corporation. The jury found the representations to be false and that the defendant had never purchased lumber from the plaintiff. The language of the court as quoted by appellant is as

follows: "The action is not based upon a breach of a contract, nor is it necessary to have a rescission of the contract to enable plaintiff to maintain his action. The theory is that the money was obtained upon a false representation that it had become due under the contract by the performance of the condition precedent by the corporation. This might all be, and the contract still remain in force."

It may here be said that whatever may have been the understandings and stipulations of the parties preliminary to the execution of the lease in the instant case, they became merged in the completed and executed document, and apparently the only basis for plaintiff's contention of fraud is the statement of plaintiff that the agents of Mrs. McGrew assured her that the clause in the contract to which she had objected had been eliminated when it had not. These representations were denied by all of the defendants, but assuming that they were not, there is no dispute of the fact that Mrs. Freligh, the plaintiff, had ample opportunity to read and ascertain the conditions of the lease before signing it or, if she preferred, to refer it to her attorney as she had done in the previous instance. This she admits she did not do, and under the circumstances she was not entitled to rely upon the representations of the defendants if they were made to her as she alleges. (*Oppenheimer* v. *Clunie*, 142 Cal. 316 [75 Pac. 900].) The contract was a valid, existing contract, and unless there was a rescission it would "still remain in force," to quote the language of the court in the case cited by appellant, and under its terms Mrs. McGrew would be entitled to retain the $1,000 paid as the first and last months' rent.

In *Oppenheimer* v. *Clunie, supra,* which was an action to have a lease canceled upon the ground that the defendant had made false representations as to certain conditions of a building, the plaintiff took possession and occupied the premises for some months after the contract for lease had been executed. The lease was signed in October, 1900, and the action was not brought until January 10, 1902. It was held that the plaintiff could not maintain his action to rescind because he did not rescind promptly, and also that he had accepted and ratified the lease after full knowledge of the facts. In this connection the court quotes Pomeroy in his work on equity jurisprudence (sec. 894) as follows: "If

in a contract of sale or leasing, representations are made by the vendor concerning some incidents, qualities, or attributes of the subject matter which are open and visible so that the falsity of the statement is patent to an ordinary observer, and it is made to appear that the purchaser at, or shortly before, the concluding of the contract had seen the thing itself which constitutes the subject matter, then a knowledge of the facts is chargeable upon such party; he is assumed to have made the agreement knowingly, and cannot allege that he was misled by the false representations.''

In the case of *McGibbon* v. *Schmidt*, 172 Cal. 75 [155 Pac. 463], the court said: ''The action to recover the purchase money was not based on fraud. It was in the form of an action for money had and received. It could not have been successfully maintained except by proof that the contract had been rescinded, or that defendant had been guilty of a breach thereof. The judgment of nonsuit was, therefore, as we must presume, based upon the fact that no rescission, termination, or breach of the contract had been proven and that it was still in force; that the plaintiff had no remedy such as she sought to enforce by that action.''

In the case of *Deasy* v. *Taylor*, 39 Cal. App. 236 [178 Pac. 538], which was an action to set aside certain agreements and transfers on the ground of fraud, it was alleged that certain of the defendants named, knowing the plaintiff to be ill, intoxicated, and unable to transact business, fraudulently procured and caused her to sign the document in question, and the court so found. It was there held that it was necessary for the plaintiff to rescind. It is also pointed out in that case that one of the essential elements of an effective rescission required by section 1691 of the Civil Code is that the person seeking to rescind must do so promptly upon discovery of the facts which would entitle him to rescind if he is free from duress, menace, undue influence, or disability and is aware of his right to rescind. We have already noted, so far as is shown by the record before us, that the plaintiff here was under no disability which would prevent her from reading or ascertaining the contents of the lease before she signed it; and it also appears from the record that the instrument in question was signed in September, 1924, and that the action was filed in the municipal court in October, 1926, or two

years later, which, without explanation, would certainly indicate a noncompliance with the statute in this particular alone. We again cite the case of *Oppenheimer* v. *Clunie*, upon this point, where the court, after stating that "it is a fundamental rule in equity that a party desiring to rescind must do so promptly," quotes further from the language of Pomeroy (sec. 837) as follows: "A person who has been misled is required, as soon as he learns the truth, with all reasonable diligence, to disaffirm the contract, or abandon the transaction, and give the other party an opportunity of rescinding it and of restoring both of them to their original positions. If after discovering the untruth of the representations he conducts himself with reference to the transaction as though it were still subsisting and binding, he thereby waives all benefit of his relief from the misrepresentations."

As to the second cause of action, the superior court, in its opinion, stated as follows: "The second cause of action purports to be an action for judicial rescission under the authority of section 3406 of the Civil Code. If it is an attempt to secure such judicial rescission, it must prove abortive, as the municipal court has no jurisdiction of such an action. Suits for judicial rescission and cancellation of contracts are essentially equitable actions of which the municipal court has no jurisdiction." Section 76 of the Code of Civil Procedure provides that "the superior court shall have original jurisdiction in all cases in equity." After a perusal of the allegations of the second cause of action the correctness of the decision as reached by the judge of the superior court is apparent and requires no further comment by us. We are also in accord with the holding that the findings of fact "do not sustain the conclusions of law nor the judgment based thereon."

Judgment affirmed.

Craig, Acting P. J., and Thompson (Ira F.), J., concurred.