[Civ. No. 7530. Second Appellate District, Division One.—July 1, 1933.]

THE DAILY TELEGRAM COMPANY OF LONG BEACH, CALIFORNIA (a Corporation), et al., Appellants, v. LONG BEACH PRESS PUBLISHING COMPANY (a Corporation) et al., Respondents.

W. A. Alderson for Appellants.

Swaffield & Swaffield, Lawrence Hall, Knight & Hall, Knight & Goddard, Kenneth Sperry and Linnell & Linnell for Respondents.

HENDERSON, J., *pro tem.*—This is an appeal from a judgment of dismissal entered after defendants' demurrer to the second amended complaint was sustained without leave to amend upon the ground that it does not state a cause of action, and that said cause of action is barred by the statute of limitations. The complaint, which is for damages based upon the alleged fraud of the defendants in procuring the execution of a contract, was filed more than three years after the accrual of the purported cause of action.

In brief, the salient facts recited by the amended complaint are in effect as follows: The appellant corporation, The Daily Telegram of Long Beach, and the respondent corporation, Long Beach Press Publishing Company, were publishing rival newspapers in the city of Long Beach. The appellant Belle McCord Roberts, the president and majority stockholder of the appellant corporation, owned all of its shares of stock except those owned by its secretary, the respondent S. S. Conklin, and the respondents otherwise individually named, owned all of the shares of the respondent corporation. During the month of August, 1924, the respondents, including said S. S. Conklin, presented a plan to the appellants for the consolidation of the two companies into a new corporation known as the Press-Telegram Company, together with the proposal that it should occupy a building then in the course of construction by the Long Beach Building Corporation, the shares of which would be divided among the respective parties in varying amounts. The appellants were finally persuaded to enter into negotiations for the purpose of effecting such an arrangement, and during the course thereof respondents prepared and presented to appellant Roberts an agreement in writing for her signature, which provided in effect: that sixty-three per cent of the stock of the proposed corporation should be issued to appellants and the balance thereof to the respondent corporation; that as the indebtedness of the appellant corporation exceeded the obligations of the respondent corporation by the sum of $103,910 the owners of the latter should purchase from the former eighteen per cent of the stock of the new corporation at a price of $140,000 to be paid for in part by the assumption of said indebtedness by the new corporation. The appellants refused to accept the terms offered by the contract, but with the counter proposal, however, that the same be redrafted to include certain changes whereby their indebtedness should be assumed by the respondent corporation and the shares of stock should be equally divided between the respondent and appellant corporations.

The respondents consented to the suggested changes and presented a second draft for the signature of said Belle McCord Roberts, both individually and as president of the appellant corporation. By reason of the loss of one eye, together with a nervous and sick condition which affected the

sight of the remaining eye, and because she was physically unable at said time to read said contract, the appellant Roberts signed the contract without reading the same, in reliance upon the fraudulent representations of respondents that the changes as requested and demanded by her had been made.

It was further alleged that during the interval following the execution of the contract she was prevented from reading the contract by reason of her absence from the city of Long Beach, with the exception of certain brief intervals, and that although a director of the corporation, her position was purely nominal with only a restricted participation in the affairs of the corporation.

The alleged fraud was not discovered until on or about the twenty-sixth day of December, 1926, when information relative to a payment of money by the Press-Telegram Company to the Long Beach Building Company caused her to make an investigation of the books of the former. By reason of this examination she was moved to read the agreement between the parties and learned for the first time of the exclusion of the provisions demanded by her to be included in said contract prior to its execution by her. It is stated by counsel for respondents, and there is no denial made, that this action was commenced on the eleventh day of December, 1929.

The appellants urge, among other things, as a ground for reversal that the trial court erred in determining that their cause of action was barred by the running of the three-year period of limitation prescribed by section 338 of the Code of Civil Procedure. Furthermore, they contend in this connection that the allegations of their complaint are sufficient to bring them within the terms of the exception expressed by subdivision 4 thereof, which provides that a cause of action, by which relief is sought upon the grounds of fraud and mistake is ''not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake''.

The requirements of a complaint necessary to invoke this exception are summarized by the recent case of *Consolidated Reservoir & Power Co.* v. *Scarborough,* 216 Cal. 698 [16 Pac. (2d) 268], which quotes with approval from *Galusha* v. *Fraser,* 178 Cal. 653, 657 [174 Pac. 311, 312],

as follows: "Where the plaintiff sues for relief on the ground of fraud, and seeks exemption from the three-year period of limitation for the reason that he did not discover the fraud until after it was perpetrated, he must not only show (1) that he did not discover the fraud until within the three years next before the action was begun, and (2) that the fraud was committed under such circumstances that he would not be presumed to have had knowledge of it at the time, but (3) *he must also set forth the times and circumstances under which the facts constituting the fraud came to his knowledge so that the court may determine from the allegations of the complaint whether the discovery was within that period.*" (See, also, *Lady Washington C. Co.* v. *Wood,* 113 Cal. 482 [45 Pac. 809]; *Original M. & M. Co.* v. *Casad,* 210 Cal. 71 [290 Pac. 456].)

The complaint, in addition to setting forth the physical inability of the appellant Roberts to read, specifically alleged, in order to excuse her nondiscovery of the fraud at the time of the execution of the contract, the following facts: "that before signing said new and second draft of said agreement said Belle McCord Roberts inquired of the defendants whether the changes agreed upon prior thereto and requested and made a condition of the execution of the contract had been made, that the defendant including the said S. S. Conklin informed and stated to said Belle McCord Roberts individually and as president of the plaintiff corporation that the changes had been made in said draft."

We are of the opinion that the complaint adequately states the facts necessary to meet the first two requirements above stated. The circumstances alleged were sufficient to excuse the appellant Roberts from reading the instrument at the time of its execution. It is the well-established rule that in the absence of a confidential relationship between the parties, reasonable prudence requires one to read or to have read to him a document, which he proposes to execute (*Hawkins* v. *Hawkins,* 50 Cal. 558; *Dale* v. *Dale,* 87 Cal. App. 359 [263 Pac. 339]; *Freligh* v. *McGrew,* 95 Cal. App. 251 [272 Pac. 791]); but this rule is subject to the limitation that where actual fraud is used in procuring an instrument to be signed the party injured is relieved from reading it. The rule is thus stated in the case of *Ferro* v. *Los Angeles*

*First Nat. etc. Bank,* 89 Cal. App. 43, on page 46 [264 Pac. 292, 293], as follows: "In *Hanscom* v. *Drullard,* 79 Cal. 237 [21 Pac. 736], the court says: 'A man may perhaps be able to discover for himself what he ought to know if left to his own devices, but where he is induced by the artifice of another not to use his opportunities it would seem hardly fair that the one using the trick or misrepresentation should remain protected.' "

In attempting to satisfy the third requirement of the rule above announced, the appellant Roberts alleged the following circumstances surrounding the discovery of the fraud: "That on or about the 26th day of December, 1926, she received information of the action of the board of directors of the said Press-Telegram Publishing Company in taking money out of its treasury and paying it to and in behalf of said Press-Telegram Building Company; that then for the first time she had an investigation made of the books, accounts and affairs of said Press-Telegram Publishing Company."

In analyzing this allegation we find nothing to show that the information leading to the discovery was not available to the appellant Roberts prior to the running of the statute. For aught that appears she was not prevented, as a director of the corporation, from making an examination of its books at all times. In this connection her averment of indifference towards the affairs of the corporation raises the inference of lack of diligence on the part of the appellant Roberts to avail herself of the information at her disposal. The degree of care required under such circumstances is succinctly stated in the case of *People* v. *San Joaquin etc. Assn.,* 151 Cal. 797, at page 807 [91 Pac. 740, 745], which quotes from *Truett* v. *Onderdonk,* 120 Cal. 589 [53 Pac. 26], as follows: "It is not enough to assert merely that the discovery was not sooner made; it must appear that it could not have been made by the exercise of reasonable diligence. And that which reasonable diligence would have disclosed, plaintiff is presumed to have known; means of knowledge in such a case being the equivalent of the knowledge which it would have produced." We quote with approval the reason for the said rule from *Consolidated Reservoir & Power Co.* v. *Scarborough, supra,* a case not dissimilar to the instant one, as follows: "Any other conclusion would

permit a defrauded party, having at all times the means of knowledge at his disposal, to complain of such fraud long after the running of the period of limitations by the simple expedient of alleging that an investigation within three years of the commencement of suit uncovered the fraud. This would place a premium on dilatory tactics and would relieve a party of exercising that diligence required by the law.''

We are not unmindful of the fact that appellant also attempts to excuse an earlier discovery by alleging that defendants ''kept secret and concealed'' the true facts relating to the fraud during the interval following the execution of the agreement. It is the well-established rule, however, that in the absence of an allegation of affirmative acts in the nature of artifice to conceal the facts, a complaint is deficient in this respect. The rule has been expressed in the case of *Phelps* v. *Grady*, 168 Cal. 73, at page 78 [141 Pac. 926, 928], by quoting from *Wood* v. *Carpenter*, 101 U. S. 135 [25 L. Ed. 807]), as follows: '' . . . Concealment must be the result of positive acts. Concealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry.''

The appellant Roberts further seeks to excuse a more timely discovery of the fraud by alleging that subsequent to the execution of the agreement she was engaged in other matters both within and without the state for protracted periods of time.

The authorities cited in support of this allegation (*Nichols* v. *Moore*, 181 Cal. 131 [183 Pac. 531]; *Kane* v. *Cook*, 8 Cal. 449) are apparently confined to instances where a plaintiff, fraudulently induced to purchase property from a distance, never had a reasonable opportunity to discover the fraud until subsequent to the period of limitation. The rule applicable to the factual situation presented by the instant case is expressed in the case of *Phelps* v. *Grady*, *supra*, at page 80, as follows: ''Says the Supreme Court of the United States: 'Parties cannot thus, by seclusion from the means of information, claim exemption from the laws that control human affairs and set up a right to open up all the transactions of the past. The world must move on, and those who claim an interest in persons or things must

be charged with knowledge of their status and condition and of the vicissitudes to which they are subject.' "

For these reasons we are of the opinion that appellants' cause of action is barred by the statute of limitations; and a consideration of other points raised by this appeal is deemed unnecessary.

The judgment is affirmed.

Conrey, P. J., concurred.

HOUSER, J., Dissenting.—I dissent. As nearly as I am able to determine the law, as attested by a host of precedent authorities emanating from the appellate tribunals of this state, the pleaded facts in the instant action make it "a borderline case". In such circumstances, I am unwilling to subscribe to a judgment by which, assuming the truthfulness of the facts alleged in the complaint, the defendants will be shielded in their asserted wrongdoing. If the pleading fairly shows that the plaintiffs actually have been defrauded by the defendants, and thus have been caused to suffer a financial loss, any doubtful question which arises on the construction of the statute, as to whether the action to recover such damages as appear to have been sustained was commenced within the time limited by the provisions of such statute, should be resolved in favor of the plaintiffs. As I read the authorities, they are to the effect that in circumstances such as are herein presented, the plaintiffs had no legal duty imposed upon them to make a discovery of the alleged facts at a date earlier than is shown by the allegations of the amended complaint discovery by plaintiffs actually occurred. Particularly am I moved to such conclusion by judicial language which appears peculiarly appropriate to the facts herein, contained in the opinion in the case of *Tarke* v. *Bingham*, 123 Cal. 163, 166 [55 Pac. 759, 760], as follows: "Where no duty is imposed by law upon a person to make inquiry, and where under the circumstances 'a prudent man' would not be put upon inquiry, the mere fact that means of knowledge are open to a plaintiff, and he has not availed himself of them, does not debar him from relief when thereafter he shall make actual discovery. The circumstances must be such that the inquiry becomes a duty, and the failure to make it a negligent omission.

(*Bank of Mendocino* v. *Baker*, 82 Cal. 114 [22 Pac. 1037, 6 L. R. A. 833]; *Prouty* v. *Devin*, 118 Cal. 258 [50 Pac. 380].) In this case, though means of information were open to the plaintiff, it does not appear that there was any duty devolving upon him to make use of them. Nothing had occurred to excite his suspicion, or to put him upon inquiry, and for these reasons, under the facts of this case, we think the finding of the court sufficient and sufficiently supported by the evidence."

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 28, 1933.

Preston, J., dissented.