[L. A. No. 14589.   In Bank.—March 31, 1936.]

BETTY KANE, Respondent, v. J. J. MENDENHALL et al.,
Appellants.

750

Willedd Andrews, Mathes & Sheppard, Robert A. Cushman and J. Stanley Mullin for Appellants.

Chas. E. R. Fulcher and Erwin H. Haas, as *Amici Curiae* on Behalf of Appellants.

Laurence Paul Scherb, G. A. Bisbee and Harold R. Spence for Respondent.

SEAWELL, J.—Plaintiff Betty Kane brought this action to procure cancellation of a deed executed by her to defendants J. J. Mendenhall and Grace Mendenhall, his wife, as grantees. In view of the fact that the property had been transferred to *bona fide* purchasers by the Mendenhalls, the court below awarded plaintiff damages in the sum of $2,500 and also exemplary damages in the sum of $2,000. The court

also rendered judgment against defendant American Surety Company, surety on the real estate broker's bond of defendant J. J. Mendenhall, for $2,000.

The defendant surety company contends that as the penal sum of the bond was $2,000, the amount required by statute, the municipal court of Los Angeles County had jurisdiction of any suit against it, and it could not be joined in a suit in the superior court against the broker for damages exceeding $2,000. Since 1928 the Constitution has provided that "the superior court shall have original jurisdiction in all civil cases and proceedings (except as in this article otherwise provided, and except, also, cases and proceedings in which jurisdiction is or shall be given by law to municipal or to justices or other inferior courts) . . . '' (Art. VI, sec. 5.) The statute fixing the jurisdiction of the municipal courts provides: ''Municipal courts shall have original jurisdiction of civil cases and proceedings as follows: (a) In all cases at law in which the demand, exclusive of interest, or the value of the property in controversy, amounts to two thousand dollars or less, except cases which involve the legality of any tax, impost, assessment, toll or municipal fine.'' (Sec. 89, Code Civ. Proc., adopted in 1933, based on sec. 29 of the Municipal Court Act, Deering's Gen. Laws, Act 5238, p. 2925.)

It would be unfortunate if an interpretation of our code provisions relating to jurisdiction and to joinder required plaintiff herein to prosecute two separate actions. The liability of the principal and the liability of the surety, though differing in amount, since the principal is liable to the plaintiff for the full amount of damages suffered, and the surety only in the penal sum of the bond, rest alike upon acts of fraud committed by the principal to the damage of plaintiff, and require the examination of questions common to both principal and surety. Actions separately tried might result in different judgments. A judgment against the principal is not conclusive in a separate action against the surety. (*McPhetridge* v. *Smith*, 101 Cal. App. 122 [281 Pac. 419]; *Mahana* v. *Alexander*, 88 Cal. App. 111 [263 Pac. 260]; 1 Freeman on Judgments, p. 1002; 23 Cal. Jur. 1062.) In *Paige* v. *Reinecke*, 139 Cal. App. 225 [33 Pac. (2d) 454], and *Yeoman* v. *Sherry*, 10 Cal. App. (2d) 567 [52 Pac. (2d) 555], the

appellate courts, without discussion, affirmed judgments for $2,000 against the surety and against the broker for more than $2,000.

The appeal of defendant surety company requires consideration of two questions: (1) whether in the absence of any question relating to jurisdiction depending on the amount in controversy, recovery may be had in a joint action, against the principal for the full amount of damages suffered by reason of acts of the principal covered by the bond, and against the surety for the penal sum of the bond; and (2) if recovery ordinarily may be had in a single action, may the principal and surety be sued jointly in the superior court where the penal sum of the statutory bond, which represents the limit of recovery against the surety, is $2,000.

■ Section 9a of the Real Estate Brokers' Act (Deering's Gen. Laws, Act 112, p. 25) provided that any person who sustains an injury covered by the real estate broker's bond ''shall have the right in his own name to commence such an action against said real estate broker and his sureties for the recovery of any damages sustained by the failure or omission of said real estate broker to perform his duties or obligations or any of them''. (Section 9a was repealed in 1933, Stats. 1933, p. 540, the repealing act providing: ''Provided, however, that this repeal shall not affect any cause of action arising under any bond given prior to the effective date of this act.'') We are of the view that the above provision of section 9a authorized recovery against the principal and surety in a single action. It is suggested that the sole purpose of the provision was to make it plain that the injured person had a direct right of action on the bond, which ran to the state of California. We cannot accede to this proposition. In the light of the nature and purpose of the bond and the other terms of the act in regard thereto, in the absence of such a provision the injured person as the real party in interest could sue thereon. (4 Cal. Jur. 363.)

■ Nor can it be said that the joint action contemplated by section 9a is solely an action *on the bond,* in which recovery against the principal, as well as against the surety, is limited to $2,000, the penal sum of the bond. Damages suffered through the fraud of the broker may often exceed the penal sum of the statutory bond of $2,000. A cause of action in tort

against the broker to recover full damages existed independently of the provisions of the Real Estate Brokers' Act, or the existence of a bond. Section 9a constitutes a recognition of this right. The section provides for recovery "of· *any damages* sustained by the failure or omission of said real estate broker to perform his duties or obligations or any of them". (Italics ours.) In so far as the damages suffered exceed the penal sum of the bond, the action against the principal may be said to rest on his delictual liability, rather than on a contractual liability based on the bond. As to the surety necessarily recovery is upon his contractual liability on the bond, and is limited thereby to $2,000, the penal sum of the bond.

Decisions in other jurisdictions to the effect that the surety cannot be joined in an action against the principal based on a common law delictual liability, are found to rest upon a preservation in those jurisdictions of the common law rule against joinder of actions in tort and contract. ▮ In this state, an action in tort may be joined with an action on contract where both arise out of the same transaction. (Sec. 427, subd. 8, Code Civ. Proc.) *Ghirardelli* v. *Bourland,* 32 Cal. 585, was decided under the Practice Act, which did not provide for joinder of actions in tort and contract when they arose out of the same transaction.

The joinder of the surety in some jurisdictions has also been regarded as violative of the common law rule that causes of action to be united must affect all parties to the action, which rule is embodied in this state in section 427 of the Code of Civil Procedure. If this provision of section 427 of the Code of Civil Procedure could be construed as prohibiting joinder in a single action of a claim against the principal for full damages, with a claim against the surety limited by the penal sum of the bond, the effect of section 9a of the Real Estate Brokers' Act is to remove such a joint action from the application of said provision. There have been instances in · which by special provision a joint action against several defendants on separate causes of action has been authorized. For example, a joint action against corporate stockholders to obtain several judgments for the varying amounts of their proportionate statutory stockholders' liability was provided for. (Sec. 322, Civ. Code.)

Furthermore, it seems doubtful whether in this state this requirement of section 427 of the Code of Civil Procedure has ever been applied in a way to prohibit joinder of a claim for full damages against the principal with a claim against the surety limited by the penal sum of the bond. Where a plaintiff recovers judgment against a principal and surety there is a recovery of but a single debt. The surety is liable for the judgment against the principal to the extent of the bond, and payment by the surety of the judgment against him operates *pro tanto* as satisfaction of the judgment against the principal, whether they are sued in a single action or separately. In this state we have upheld joint suits for personal injuries against a tort-feasor and his insurer, where by virtue of provision in the policy of insurance or statute the injured person had a direct right of action against the insurer and was not required first to obtain judgment against the insured. (*Milliron* v. *Dittman,* 180 Cal. 443 [181 Pac. 779]; *Gugliemetti* v. *Graham,* 50 Cal. App. 268 [195 Pac. 64]; *Van Der Hoof* v. *Chambon,* 121 Cal. App. 118, 125 [8 Pac. (2d) 925]; *Fraher* v. *Eisenmann,* 94 Cal. App. 48 [270 Pac. 704]; cases decided without citing section 2777, Civil Code; see note, 96 A. L. R. 356.) Such joint suits against the tort-feasor on his delictual liability and against the insurer on his contract of insurance have not been held violative of the rule that causes of action to be united must affect all parties to the action.

The joinder in one action of a cause against the corporation for the full amount of a corporate debt, and causes against several stockholders for their proportionate statute liabilities has also been upheld. (*Avery* v. *Chucawalla Development Co.,* 175 Cal. 644 [166 Pac. 1002]; *Aronson & Co.* v. *Pearson,* 199 Cal. 286, 293 [249 Pac. 188, 51 A. L. R. 1380]; *Kennedy* v. *California Sav. Bank,* 97 Cal. 93 [31 Pac. 846, 33 Am. St. Rep. 163]; *Nelson* v. *Marsh,* 100 Cal. App. 578, 582 [280 Pac. 695]; *Kiefhaber Lbr. Co.* v. *Newport Lbr. Co.,* 15 Cal. App. 37 [113 Pac. 691].)

In addition it has been said that the joinder of parties and joinder of causes are inextricably connected, and that the effect of the 1927 amendments to the sections relating to joinder of parties is to make important modifications in the application of the rule that causes of action to be united must affect all parties to the action. (*Peters* v. *Bigelow,* 137 Cal.

App. 135 [30 Pac. (2d) 450]; *Colla* v. *Carmichael U-Drive Autos, Inc.,* 111 Cal. App. (Supp.) 784 [294 Pac. 378]; 23 Cal. Law Rev. 320; 2 So. Cal. Law Rev. 315.) In *Peters* v. *Bigelow, supra,* where the court upheld joinder under section 378 of the Code of Civil Procedure, as amended in 1927, of plaintiffs who had separate causes of action against defendant for false imprisonment growing out of the same transaction, it was said that the effect of the amendment was to except from the requirements of section 427 of the Code of Civil Procedure those cases coming within the provisions of section 378, as amended. It would seem that sections 379a and 379b, added in 1927, and relating to joinder of defendants, would have a similar effect, and permit joinder of defendants such as a principal and surety in the instant case, where the causes of action arose out of the same transaction and involved common questions.

■ We have now to consider the additional problem presented by the fact that in the instant case recovery against the surety was limited by its bond to $2,000, an amount within the jurisdiction of the municipal court. We are of the view that plaintiff was not required to sue the surety separately in the municipal court. We have heretofore held the claims against the broker and surety joinable. *Moore* v. *McSleeper,* 102 Cal. 277 [36 Pac. 593], supports our conclusion that the surety may be sued in the superior court. In that case judgment was entered against a sheriff in a suit growing out of an attachment. Said sheriff had previously caused an indemnity bond to be issued to himself to protect him in the performance of his duty. It was held that under section 1055 of the Code of Civil Procedure, judgment could be entered against the several sureties in favor of the sheriff in the superior court suit against the sheriff, although the sureties were severally. liable for amounts below $300. We also find support for our conclusion that the claim against the surety for $2,000 may be urged in the superior court action, in those cases which permit the assertion in the superior court of a counterclaim or cross-complaint arising out of the same transaction for an amount within the jurisdiction of the justice or municipal court. (*Sullivan* v. *California Realty Co.,* 142 Cal. 201 [75 Pac. 767]; *Moore* v. *Groftholdt,* 10 Cal. App. 714 [103 Pac. 149]; *Kling* v. *Kimball Pump Co.,* 138

Cal. App. 470 [32 Pac. (2d) 659].) It is held that if action is first commenced in the justice court on the smaller claim, the holder of the larger claim may procure an injunction against further prosecution of the justice court action, and require litigation of both claims in the superior court. (*Todhunter* v. *Smith,* 219 Cal. 690 [28 Pac. (2d) 916]; *Gregory* v. *Diggs,* 113 Cal. 196 [45 Pac. 261]; *Coggins* v. *Superior Court,* 127 Cal. App. 412 [16 Pac. (2d) 148].) In the recent case of *Brix* v. *People's Mut. Life Ins. Co.,* 2 Cal. (2d) 446 [41 Pac. (2d) 537], action was commenced in the superior court on a demand within the jurisdiction of the municipal court. Thereafter the defendant filed a cross-complaint arising out of the same transaction for cancellation, an equitable proceeding, and hence within the sole jurisdiction of the superior court at the time when the action arose. (Section 89, Code of Civil Procedure, now provides for jurisdiction in municipal courts to cancel contracts under certain conditions, Stats. 1933, p. 1811.) We held that the superior court had jurisdiction of both claims. (See article, 24 Cal. Law Rev. 338.) Thus it appears that the former constitutional provisions and the present statutory provisions conferring jurisdiction on the inferior courts of demands below certain amounts have not been interpreted as forbidding determination of said demands in the superior court where they are connected with larger claims, or with a type of demand solely within the jurisdiction of the superior court.

We are of the view that such a connection exists between the demand against the broker and surety herein that the claim against the surety for $2,000 may be tried in the superior court action. In the case of the principal and surety there is a single debt for which the principal is liable in full, the surety to the extent of his bond. Payment by the surety *pro tanto* satisfies the creditor's judgment against the broker. In this regard the action differs from a joint action against several stockholders of a corporation on account of their proportionate statutory liability, as to which it has been held those whose several liabilities are for amounts within the jurisdiction of the inferior court cannot be joined in the superior court action against those liable for larger amounts. (*Derby* v. *Stevens,* 64 Cal. 287 [30 Pac. 820]; *Johnson* v. *Hinkel,* 29 Cal. App. 78 [154 Pac. 487].) In the case of

stockholders, each was liable for the full amount of the separate judgment against him. Payment by one stockholder did not apply upon the judgment against others.

We conclude that the broker and surety may be sued in a joint action in the superior court. A rule which would require two separate actions to examine the same facts and legal questions would result in multiplicity of suits, wasteful of the time of our already overcrowded courts.

■ Appellants further contend that the evidence does not support the findings in plaintiff's favor. · The court found that defendant J. J. Mendenhall procured plaintiff to execute a deed on August 29, 1931, to himself and his wife by concealing from her the fact that the instrument which she signed was a deed, and by representing that it was merely a paper necessary for the completion of the escrow in an exchange transaction in which he represented plaintiff as a real estate broker. Plaintiff did not discover that the instrument was in fact a deed until about April 18, 1932.

It appears that plaintiff, who had recently lost her husband, was the owner of a duplex bungalow in Los Angeles County, subject to an encumbrance of $3,660. She agreed to exchange her equity in this property for an unimproved lot in the city of Los Angeles owned by Mrs. E. Myers and $1200 in cash. By the written agreement of exchange, plaintiff was to pay Mendenhall $368 as commission, and Mrs. Myers was to pay him $100.

The instruments required to consummate the transaction were placed in escrow with a title insurance company. The escrow instructions given by plaintiff provided for payment of $383 to Mendenhall, which he testified represented the commission of $368, and $15 additional which he had advanced to plaintiff to pay her current bills. On August 29, 1931, Mendenhall executed instructions to the title company as follows: "Instead of obtaining for me from Betty M Kane commission of $383 you will only collect $200 from her." On the same date Mrs. Kane executed further escrow instructions as follows: "You will prepare a deed to be signed by Betty M. Kane to J. J. Mendenhall and Grace Mendenhall, husband and wife, as joint tenants, covering Lot 19 in Block 'K' of Tract No. 6447, Sheets 1 to 4, inclusive, as per map recorded in Book 75, pages 80 to 83 of Maps.

"You are authorized.to record this deed without collection for me as I have received full consideration on the outside of escrow.

"You will show title in the above mentioned grantees in your policy, and send the deed and policy to the grantees above at close of escrow, subject to the bonds of record."

The lot referred to in this instruction is the lot which plaintiff was to receive in the exchange from Mrs. Myers. On the same date, August 29, 1931, plaintiff signed a deed to Mendenhall. The escrow instructions and the deed were prepared and executed at the office of the title insurance company, which recorded the deed to Mendenhall and the deeds in the exchange transaction as directed by the several escrow instructions. Plaintiff contends that Mendenhall procured her to sign the escrow instructions of August 29th, and the deed of that date by concealing the nature of said instruments and representing that they were merely formal instruments required to close the escrow; that said defendant, with whom she had previous dealings and in whom she reposed full confidence, told her that he would protect her interests fully, and look over all papers, and that she need not read them; and that, relying on said defendant, she did not read the instructions and deed, nor discover that she had signed a deed until April 18, 1932. At that time she had received an offer to purchase the lot through another broker. Plaintiff denied that she had ever seen the lot before she entered into the exchange agreement.

Where one signs an instrument without reading it in reliance on representations as to its contents in fact false, the instrument may be avoided where a confidential relation exists between the parties. (*Mazuran* v. *Stefanich*, 95 Cal. App. 327, 331 [272 Pac. 772]; *Gajanich* v. *Gregory*, 116 Cal. App. 622 [3 Pac. (2d) 389]; 6 Cal. Jur. 84.) In the absence of a confidential relation, a review of the authorities in *Mazuran* v. *Stefanich, supra,* indicates that there is a conflict in other jurisdictions, and that the decisions in this state are not entirely harmonious. (In addition to cases cited in *Mazuran* v. *Stefanich, supra,* see *Freligh* v. *McGrew,* 95 Cal. App. 251 [272 Pac. 791]; on effect of failure to read in general, see *Gridley* v. *Tilson,* 202 Cal. 748 [262 Pac. 322]; *Simmons* v. *Ratterree Land Co.,* 217 Cal. 201 [17 Pac. (2d)

727]; *Knox* v. *Modern Garage etc. Shop,* 68 Cal. App. 583 [229 Pac. 880]; *Greve* v. *Taft Realty Co.,* 101 Cal. App. 343 [281 Pac. 641].

In the instant case, the relation of principal and agent existed between plaintiff and Mendenhall. This relation is fiduciary. (Sec. 2322 and sec. 2228, Civ. Code; *Calmon* v. *Sarraille,* 142 Cal. 638 [76 Pac. 486]; *Williams* v. *Lockwood,* 175 Cal. 598, 601 [166 Pac. 587]; *Newell-Murdoch Realty Co.* v. *Wickham,* 183 Cal. 39 [190 Pac. 359]; 6 Cal. Jur. 74; 12 Cal. Jur. 713.) In *Calmon* v. *Sarraille, supra,* the agent falsely represented to his principals that the vendor of real property required in addition to $10,500 in cash, the transfer of a lot owned by the principals. He procured his principals to execute a deed to him by representing that it was a deed to the vendor. By the judgment the deed was set aside.

Defendant Mendenhall testified that after execution of the exchange agreement, but before consummation of the transaction, plaintiff came to his office and said that as she was receiving only $1200 in cash she could not afford to pay him a commission in cash, and requested that he accept the lot to be transferred to her by Mrs. Myers as his commission. He finally agreed to accept the lot as his commission provided plaintiff would loan him $200 for sixty days. According to Mendenhall, the $200 which he admittedly received through the escrow and which was provided for in the instructions of August 29th to the title company, constituted this loan. He gave plaintiff a promissory note of $200, which he produced upon the trial, marked "paid" by plaintiff.

Plaintiff, on the other hand, testified that the $200 which Mendenhall received through the escrow under the instructions of August 29th was to constitute his commission, rather than a loan to him; that she subsequently loaned him $200, evidenced by the promissory note which defendant produced at the trial, marked "paid", and that she loaned him a further sum of $200, for which he gave no note and had not repaid. Defendant denied that he had received any sum from plaintiff except the $200 paid to him through the escrow.

According to plaintiff, defendant represented to her that the lot had a value of $2,500. Within a month after its transfer to him he sold it for $900, subject to bonds of $350, which were a lien at the time of the exchange. Plaintiff did not

discover that she had been deceived into transferring the lot to the Mendenhalls until April, 1932.

Plaintiff was present with Mendenhall at the office of the title company when the deed to the Mendenhalls and the instructions which directed delivery of said deed without collection were prepared. She testified that Mendenhall as her agent gave the instructions from which the employees of the company prepared the instruments, and that she sat on a bench where she could not hear the instructions which Mendenhall gave. She did not read the instruments, but relied entirely on Mendenhall's promise to read all papers for her. She further testified that at various times she inquired of defendant if he had sold the lot for her, and at one time she told him that Mrs. Myers, the former owner, knew someone who would offer $900 for it. Defendant replied, "My goodness, the $2,500 lot? I could do better than that. You don't do anything about it at all."

Defendant Mendenhall testified that Mrs. Kane herself gave the title company officer the directions from which the deed to Mendenhall and the instructions for delivery to him were prepared, and that if he gave the instructions Mrs. Kane must necessarily have heard all that was said. Mendenhall's testimony was corroborated by the officer of the title company. His testimony as to plaintiff's intent to transfer the lot to him and her knowledge of the contents of the instruments she signed, was corroborated by the notary who took plaintiff's acknowledgment to the deed, and by certain other testimony.

The above outline of the evidence indicates a sharp conflict. The trial court made findings in favor of plaintiff. In reaching its conclusion, the trial court was doubtless influenced by the instruction given the title company by Mendenhall on August 29th, as follows: "Instead of obtaining for me from Betty M. Kane commission of $383 you will only collect $200 from her." This instruction would seem to describe the $200 payment as a commission, and supports plaintiff's statement that the $200 which Mendenhall admittedly received through the escrow was to constitute his commission. The escrow instructions nowhere refer to a transfer of the lot in lieu of a cash commission.

It is difficult in this case to discern from an inspection of the record where the truth lies. Weighing the credibility of

the witnesses was the trial court's responsibility. The witnesses were in the presence of the trial judge, and his judgment as to their credibility is final in the matter.

The judgment is affirmed.

Langdon, J., Curtis, J., Waste, C. J., Shenk, J., and Thompson, J., concurred.

Rehearing denied. Waste, C. J., and Conrey, J., voted for a rehearing.