[Civ. No. 20323.   Second Dist., Div. Three.   Mar. 25, 1955.]

FRANK P. H. ALDRICH et al., Respondents, v. TRANS-CONTINENTAL LAND AND WATER COMPANY (a Corporation) et al., Appellants.

Gendel & Raskoff and Douglas Badt for Appellants.

Homer C. Compton for Respondents.

WOOD (Parker), J.—Appeal by certain defendants from preliminary injunction and from orders denying motions to vacate the injunction.

There are 98 plaintiffs herein. The amended complaint sets forth 60 alleged "Counts," and each "Count" sets forth two alleged "Causes of Action." In each "Count" one or more of the plaintiffs make the allegations in each of the two causes of action in the "Count." The first of the two causes of action in each "Count" alleges a rescission of a contract to purchase real property from defendants Continental Subdivisions, Inc., or Transcontinental Land and Water Company, and seeks a return of money paid, and the second cause of action is for money had and received. In other words, the amended complaint is in effect a complaint wherein there are 120 causes of action, and wherein certain of the 98 plaintiffs appear as the plaintiff or plaintiffs in 60 groups of two causes of action—one cause of action being to recover money after rescission and the other cause of action being for money had and received. Fifty-seven of the "60 groups" were for amounts that were within the jurisdiction of the municipal court; and three of those groups were for amounts within the jurisdiction of the superior court.

The complaint herein was filed on April 7, 1952. Defendants Continental and Transcontinental demurred to the complaint, and the demurrer was sustained on July 24, 1952. On July 29, 1952, said defendant Continental assigned its rights in 13 of said contracts of purchase to defendant M. Allis for the purpose of collection. It thus appears that when Continental made said assignments it knew that this present action was pending in the superior court. On July 29, 1952, Allis commenced 13 actions in the municipal court of Los Angeles to recover the amounts due on the contracts.

On August 28, 1952, the plaintiffs herein filed an amended complaint, and they also filed a supplemental complaint for an order restraining the defendants herein from proceeding with the municipal court actions pending the trial of this present action.

The defendants in the 13 actions failed to appear therein and their defaults were entered on September 3, 1952. Their motions to be relieved from the defaults were granted by the municipal court on October 21, 1952. On October 29, 1952, Allis appealed to the appellate department of the superior court from the orders granting such relief.

On May 27, 1953, while the appeals from those orders were pending, the superior court issued an order requiring Continental Subdivisions, Inc., and Allis to show cause why they and their agents should not be restrained during the

pendency of the present action from prosecuting the municipal court actions or bringing any new actions involving the contracts involved in the present action. Also on that day, the superior court issued a temporary restraining order so restraining said defendants.

On June 5, 1953, the superior court made a minute order granting such a preliminary injunction as to defendant Continental Subdivisions, Inc. On June 9, 1953, the superior judge signed and filed a preliminary injunction enjoining Continental Subdivisions, Inc., and its agents from prosecuting the municipal court actions or bringing further actions against plaintiffs herein involving the contracts which are the subject of the present action.

On June 22, 1953, defendants Continental Subdivisions, Inc., and Allis made a motion (in the superior court) for an order vacating the preliminary injunction or for an order modifying the injunction to permit Allis to file a reply brief on appeal in the municipal court actions. On July 1, the injunction was so modified.

On July 13, 1953, the orders of the municipal court, relieving the defendants in the 13 actions from default, were reversed. Judgments have not been rendered in the municipal court upon the defaults.

On July 17, 1953, Continental Subdivisions, Inc., filed a notice of motion to vacate the preliminary injunction or to modify it to permit Continental and its agents to proceed with the municipal court actions and enter judgments therein. On July 24, 1953, said motion was denied.

The appeal in the present case is by defendants Continental Subdivisions, Inc., and Transcontinental Land and Water Company. They appeal from the minute order granting the preliminary injunction; from the preliminary injunction; from a purported order of July 1, 1953, and from an order of July 24, 1953, denying motions to vacate the preliminary injunction.

Appellants contend that the superior court did not have jurisdiction to enjoin them from proceeding in the municipal court actions. They argue that there was a misjoinder of parties plaintiff in that there was no question of law or fact which was common to all the parties to the action as required by section 378 of the Code of Civil Procedure; that in each of the "60 groups" of causes of action a different parcel of real property is involved; that in each sale a different plaintiff or plaintiffs were involved; that each con-

tract is a separate contract in which no other plaintiff or plaintiffs have any interest; that plaintiffs allege that several types of alleged misrepresentations were made by defendants at different times, in different places and concerning different parcels of property. Said section 378 provides: "All persons may be joined in one action as plaintiffs who have an interest in the subject of the action or in whom any right to relief in respect to or arising out of the same transaction or series of transactions is alleged to exist . . . where if such persons brought separate actions any question of law or fact would arise which are common to all the parties to the action; . . .."

It was alleged in substance in the first causes of action that about March 11, 1948, defendants entered into a scheme to cheat and defraud the public and particularly said plaintiffs, in that, defendants purchased certain tracts of land in Kern County for the purpose of subdividing said lands and creating fictitious values for them by making false representations relative to their value and location, knowing that said lands were not readily accessible, that they would be sold without previous inspection and that the purchasers would be dependent on information given them by defendants; as a part of said scheme defendants caused to be incorporated certain companies, named as defendants herein, for the purpose of holding title to said lands and shielding defendants from individual liability.

It was further alleged therein that through such corporations the following false representations were made to each of the plaintiffs: there was being constructed on said lands a community of stores, churches, residential and rental units, known as Rocket Town, and that paved streets and sewers were in or would be in by a certain date; Rocket Town was at the gates of a testing station being operated by the federal government; there was a great demand for housing by employees of said station; thousands of the employees were ready to purchase lots and houses and there was a ready resale market for all lots sold to plaintiffs; FHA loans were available for investors for rental housing and business buildings; by means of maps, printed in literature distributed by defendants to plaintiffs, relative locations of said lands with respect to important highways and communities were so contorted as to give the impression that the lands were close to the highways and communities whereas they were separated by hundreds of miles; in the printed form of contract

defendants represented that if there was no inspection of the property and if it was not as represented in the literature which accompanied the contracts plaintiffs' money would be refunded; the project was the "Beverly Hills" of the desert; there was a desperate need for housing in Rocket Town and it had a sensational future; lot owners in said tract were qualified to procure 100 per cent financing under the "Wherry bill"; hundreds of people working for the testing station were living in tents and shacks; construction for lot owners would cost $4.50 per square foot; there would be plenty of water at all times; various businesses were ready to go into Rocket Town, and lots had been sold to chain drugstores and food stores; the government testing station was permanent, and the government intended to increase its personnel as soon as additional housing was available in the vicinity.

It was alleged further therein that all of said representations were made with full knowledge of their falsity with intent to deceive plaintiffs; said false representations were relied upon by plaintiffs who were induced thereby to purchase the property (specifically described therein); contracts and deeds were executed by defendants Transcontinental Land and Water Company or Continental Subdivisions, Inc., and plaintiffs paid certain sums (specifically set forth therein) to defendants as the purchase price or on account of the purchase price of said property; a copy of the contract between defendants and one of the plaintiffs herein is attached to and made a part of the complaint; said copy is the same form which defendants used in making sales of the property to the other plaintiffs herein; about February 18, 1952, plaintiffs served upon defendants Transcontinental and Continental notices of rescission, the form and substance of which are set forth in exhibits attached to and made a part of the complaint; in the notices of rescission plaintiffs demanded the return of all things of value received by defendants from plaintiffs, and offered to reconvey the property to defendants upon receipt of all sums paid to defendants; defendants had failed and refused to pay said sums or any part thereof; the property is not worth the sums which plaintiffs paid or agreed to pay for it, and each lot sold to the various plaintiffs is not worth in excess of a certain amount specified in the complaint—the amounts specified as the value of the various lots range from $5.00 to $30.

It was further alleged therein that plaintiffs were lulled

into a false sense of security and were precluded from asserting their rights immediately upon discovery of the falsity of the representations, due to further misrepresentations of defendants to the effect that the building program was being held up principally for the reason that defendants were attempting to get better financing from FHA for the investors; and for the further reason that when individual plaintiffs herein complained to defendants about their failure to carry out their promises, the defendants informed said plaintiffs that plaintiffs could not prevail in any action against defendants for misrepresentation due to a provision in the contracts to the effect that vendors were not liable for any misrepresentations of their agents not contained in said contracts, and that if the plaintiffs failed to obtain judgment against defendants, the plaintiffs would be liable for all costs and attorneys' fees incurred by defendants; plaintiffs believed said representations and were thereby intimidated until an association of dissatisfied purchasers (plaintiffs) of said lands was formed and plaintiffs were advised by counsel; immediately upon becoming aware of their rights, plaintiffs gave notices of rescission to the defendants.

It was alleged in the second causes of action that on or prior to February 18, 1952, defendants received from plaintiffs for the use of plaintiffs certain sums of money (specifically set forth therein); on said February 18, plaintiffs demanded of defendants payment of such sums; defendants have not paid any part thereof.

The allegations of the complaint present questions of law and fact which are common to all the parties to the action. Some of those questions are whether: (1) Defendants entered into a scheme to cheat and defraud the plaintiffs by making false representations relative to value and location of the subdivided land. (2) Defendants, as a part of the scheme, incorporated certain companies for the purpose of shielding individual defendants from liability. (3) False representations, as specifically alleged, were made to each plaintiff relative to buildings that were being constructed on the land, and relative to streets and sewers that were on the land; that there was a great demand for housing in Rocket Town by employees of a testing station operated by the federal government; that FHA loans were available; that maps, in literature distributed by defendants to plaintiffs, gave false impression as to the relative locations of highways and communities; that lots were actually sold to chain stores; that

there would be plenty of water. (4) Defendants represented in the contracts made with plaintiffs that, if there was no inspection of the property and if the property was not as represented in the literature which accompanied the contracts, the plaintiffs' money would be refunded. (5) The same form of contract was used in the sales to all the plaintiffs. (6) Plaintiffs served upon defendants the same form of notice of rescission, and all those notices were served about February 18, 1952. (7) The various lots were practically worthless. (8) Plaintiffs were lulled into a false sense of security and precluded from rescinding immediately, by reason of misrepresentations regarding a delay in the building program and regarding attempts to get better FHA financing for investors.

*Adams* v. *Albany,* 124 Cal.App.2d 639 [269 P.2d 142], was an action by 78 plaintiffs for damages based on conspiracy and fraud of defendants in the sale of houses to plaintiffs (war veterans and wives). A demurrer to the second cause of action on the ground of misjoinder of parties was sustained without leave to amend. It was alleged in said second cause of action that defendants fraudulently conspired to and did obtain priorities (under the provisions of the Veterans' Emergency Housing Act of 1946) for materials, and that the houses they built were not in conformity with specifications submitted with the applications for priorities; the plaintiffs relied upon representations of defendants that the houses were built according to the specifications. Those allegations were followed by special allegations relating to the house purchased by each of the 40 separate sets of plaintiffs. The court therein held that a community interest in the questions of law and fact sufficiently appeared to meet the statutory requirement and to permit plaintiffs to join in the action. It was stated therein at page 647: "One scheme is alleged, based on conspiracy and fraud, depending upon the same basic misrepresentations, and leading to a series of transactions exactly similar in kind and manner of operation which have affected all of the plaintiffs." It was also said therein (*Ibid.*): "The controlling questions of law, relating to liability, are the same with respect to each of the plaintiffs. A very large part of the evidence as to one of the series of incidents would be equally applicable to the others. While some of the evidence, as to details and amounts, would vary with respect to the different plaintiffs, no good reason appears in law or in reason to compel the filing of 40 separate actions,

with a resulting duplication, that many times, of all of the evidence.''

*Akely* v. *Kinnicutt,* 238 N.Y. 466 [144 N.E. 682], was an action commenced by 193 plaintiffs, each claiming a separate and independent cause of action for damages caused by alleged fraud of defendants. Each cause of action therein was in substance that defendants conspired to organize a corporation and to float its stock at more than actual value; defendants prepared and circulated throughout the country a prospectus which misrepresented the value of the stock; plaintiffs relied upon the alleged truthfulness of the prospectus and were induced thereby to purchase stock at prices far in excess of its value. It was held therein that the causes of action presented common issues which were basic, and that there was not a misjoinder of plaintiffs. It was stated therein (144 N.E. 684) that the questions common to the causes of action were whether defendants conspired to organize a corporation and float its stock at more than its real value, whether in pursuance of the conspiracy they fraudulently issued a prospectus showing the stock to be much more valuable than it really was, and whether they did this with intent to defraud the public by inducing it to buy the stock at an unconscionable value. ·

Appellants argue further to the effect that since the sales were made at different times and places, the sales did not arise out of the same transaction or series of transactions within the meaning of said section 378. In *Akely* v. *Kinnicutt, supra,* it was said further (144 N.E. 684) : ''Then it is urged by appellants that there is lacking that feature, essential to the collection in one complaint of all of these causes of action, that they should be 'in respect of or arising out of the same transaction or series of transactions.' We do not find any basis for this claim. Each cause of action is based upon a purchase of stock at a fictitious value in reliance upon representations, as alleged, of defendants in respect of the value of that stock, which were untrue and fraudulent, and made for the purpose of inducing the public including plaintiff to make such purchases. The transaction in respect of or out of which the cause of action arises is the purchase by plaintiff of his stock under such circumstances, and such purchases conducted by one plaintiff after another respectively plainly constitute a series of transactions within the meaning of the statute . . . and the many purchases by plaintiffs respectively do not lose their character as a series of transactions because they occurred at different places and times extending through many

months.'' In the present case the sales constituted a series of transactions within the meaning of said section 378.

There was not a misjoinder of parties plaintiff herein.

As above stated, 57 of the groups of causes of action were for amounts that were within the jurisdiction of the municipal court, and three of the groups were for amounts within the jurisdiction of the superior court. ■ It is conceded that if there is a proper joinder of plaintiffs the superior court has jurisdiction of the causes of action that are for amounts within the jurisdiction of the municipal court. In *Kane* v. *Mendenhall*, 5 Cal.2d 749 [56 P.2d 498], it was said at page 756: ''Thus it appears that the former constitutional provisions and the present statutory provisions conferring jurisdiction on the inferior courts of demands below certain amounts have not been interpreted as forbidding determination of said demands in the superior court where they are connected with larger claims, or with a type of demand solely within the jurisdiction of the superior court.''

■ As a summary, it may be said that the causes of action presented questions of law and fact common to all parties, that the causes of action arose out of the same series of transactions, that the causes of action for amounts within the jurisdiction of the municipal court were properly joined with causes of action for amounts within the jurisdiction of the superior court, and therefore there was not a misjoinder of parties plaintiff. The superior court had jurisdiction of the subject matter. In view of the supplemental complaint seeking an injunction, the superior court had jurisdiction to enjoin appellants from proceeding in the 13 municipal court actions.

■ Appellants contend further that the court erred in granting the injunction. They argue that the granting of the injunction was in effect the same as granting relief from the defaults; that the injunction did not prevent a multiplicity of actions, since the defaults had been entered and nothing remained to be done except to enter judgments on the defaults; and that it was an abuse of discretion to grant the injunction. The 13 municipal court actions were commenced by Allis, appellants' assignee for collection, about four months after the superior court action was commenced. Those 13 actions were based on 13 of the contracts of sale which were involved in the superior court action. Prior to the time the assignments of those claims were made by appellants to Allis, the appellants had appeared in the superior court action and, of

course, knew that the superior court action was pending. Section 416 of the Code of Civil Procedure provides: "From the time of the service of the summons and of a copy of the complaint in a civil action . . . the court is deemed to have acquired jurisdiction of the parties, and to have control of all the subsequent proceedings. . . . The voluntary appearance of a defendant is equivalent to personal service of the summons and copy of the complaint upon him." In *Curl* v. *Pacific Home,* 108 Cal.App.2d 655 [239 P.2d 481], plaintiff sought declaratory relief with respect to a contract regarding her occupancy of a room, and she obtained a preliminary injunction enjoining defendant, during the pendency of that action, from prosecuting a municipal court action for unlawful detainer which defendant had commenced against her. The court said (p. 661): "The portion of the injunction that enjoins the appellant from proceeding further with the municipal court action is clearly proper since the superior court through the service of process first obtained jurisdiction. . . ." Section 526 of the Code of Civil Procedure provides: "An injunction may be granted in the following cases: . . . 6. Where the restraint is necessary to prevent a multiplicity of judicial proceedings; . . . ." In *Engleman* v. *Superior Court,* 105 Cal.App. 754 [288 P. 723], Pomeroy's Equity Jurisprudence is quoted as follows (pp. 759-760): " 'Where it is essential to promote the ends of justice that an entire controversy should be determined in one proceeding, so that, the rights and duties of all parties interested may be finally settled, it may be necessary to restrain other suits, so as to prevent the pendency of two or more actions involving the same subject matter, or to prevent a partial litigation of the controversy, or to prevent a multiplicity of suits depending upon the same facts or principles.' " The court herein did not abuse its discretion in granting the injunction.

The notice of appeal herein recites in part that an appeal is taken from an order of July 1, 1953, denying a motion to vacate the preliminary injunction. The record does not show that there was such an order. The appeal from that purported order is dismissed.

The orders granting preliminary injunction and denying motion to vacate preliminary injunction are affirmed.

Shinn, P. J., and Vallée, J., concurred.