[Civ. No. 4654.    Fourth Dist.    Apr. 20, 1954.]

LESTER T. ADAMS et al., Appellants, v. WILLIAM C. ALBANY et al., Respondents.

James W. Harvey, L. Kenneth Say and Dorothy E. Handy for Appellants.

Samuel B. Stewart, Christopher M. Jenks, Charles E. Cooper, Stutsman, Hackett & Nagel, Ray W. Hays and Claude L. Rowe for Respondents.

BARNARD, P. J.—This is an action for damages for "civil conspiracy and fraud in the sale of houses to certain veterans of World War II and their wives, and in the construction of

said houses.'' There are 78 plaintiffs, consisting of 38 couples and two single plaintiffs. The defendants are William C. Albany, a contractor; Howells and Vail, real estate agents; Southern Realty Company, original owner of a subdivision in Fresno; and the Bank of America, with five of its officers.

The action was filed on February 7, 1949, and demurrers were sustained with leave to amend. The amended complaint alleges that the 40 sets of plaintiffs entered into separate house purchasing agreements with the defendants on certain dates, the earliest being July 10, 1946, and the latest October 4, 1946. The first cause of action, alleging conspiracy and fraud, seeks to recover damages to the extent of the sums charged in excess of the maximum prices fixed pursuant to the Veterans' Emergency Housing Act of 1946. A second cause of action is based on the theory that all of the defendants conspired to defraud the plaintiffs, by intentionally failing to construct these houses in conformity with the required plans and specifications, and in accordance with the representations made.

Demurrers to both causes of action were sustained, some with leave to amend and some without. The plaintiffs elected not to amend, and they have appealed from a judgment of dismissal which followed.

Briefly stated, the following facts were alleged in the first cause of action. In July, 1946, Albany agreed to purchase certain lots in this tract from Southern Realty Company upon which he proposed to construct homes for sale to veterans. Prior thereto and continuing thereafter, the defendants, intending to cheat and defraud the plaintiffs, fraudulently conspired to induce plaintiffs to purchase homes at prices in excess of maximum ceiling prices fixed by the federal government, and in excess of their reasonable value. In furtherance of this conspiracy defendants arranged for the construction, financing and sale of homes in this tract. They secured plaintiffs' signatures on various documents by representing that they would construct and sell homes to plaintiffs at prices below the maximum ceilings fixed by the government. Among the documents thus secured were applications for priorities for building materials, and contracts signed by the respective plaintiffs as ''Owner'' and by Albany as ''Contractor.'' These contracts purported to be building contracts, and provided that the contractor was to build a house on a designated lot in accordance with certain plans and specifications, and that the owner was to pay a certain sum in installments as the work

progressed, with the final payment 35 days after completion. The defendants, by using these documents and representing to the government that the plaintiffs were having these houses constructed and were not merely purchasing them, obtained priorities under the provisions of the Veterans' Emergency Housing Act of 1946 and other acts, and used these priorities to secure materials for the construction of said dwellings. The defendants sold these houses to the plaintiffs for prices in excess of the maximum prices which had been fixed under the statutes, concealing the facts from the plaintiffs, and representing that the prices charged were below the fixed maximum prices. These representations were false, and knowingly made to induce the plaintiffs to act thereon. The defendant bank, in concert with the codefendants and in furtherance of this common plan, financed the purchase of the homes by the plaintiffs on a 100 per cent basis, knowing that these loans were for amounts in excess of the maximum sale price and in violation of the federal acts. The papers and documents disclosing the true nature of the transactions were concealed from the plaintiffs, but were finally disclosed to them by employees of the government on February 8 and 9, 1948. Relying on these representations, and acting individually at times and dates thereafter set forth, the plaintiffs entered into a series of separate agreements with the defendants for the purchase of said homes at prices in excess of said maximum ceiling prices. A list of the various plaintiffs is then set forth showing, in each instance, the description and location of the dwelling so purchased, the represented maximum sales price, the actual maximum sales price, and the amount of the overcharge. The prayer is for damages in the amount of the overcharge with respect to each purchaser, ranging from about $1,000 to about $2,000, and for a reasonable attorney's fee as to each plaintiff.

The court sustained general demurrers to the first cause of action with leave to amend, and also sustained demurrers on the ground that said first cause was barred by section 7d of the Veterans' Emergency Housing Act of 1946. Prior to its repeal, section 5 of that act made it unlawful for any person to sell any housing accommodation at a price in excess of the maximum sales price applicable to such sale. Section 7d read as follows:

"(d) If any person selling housing accommodation violates a regulation or order prescribing a maximum selling price, the person who buys such housing accommodations may, within

one year from the date of the occurrence of the violation, bring an action for the amount by which the consideration exceeded the maximum selling price, plus reasonable attorney's fees and costs as determined by the court.''

The appellants contend that the allegations of the first cause of action are sufficient to set forth a cause of action for conspiracy and fraud; that fraud tolls the running of the statute of limitations contained in the statute; that it was alleged that the defendants fraudulently concealed the facts upon which their cause of action was based; and that the action was brought within one year after discovery of the facts. They rely on *Scarborough* v. *Atlantic Coast Line R. Co.,* 178 F.2d 253, and upon such cases as *Twining* v. *Thompson,* 68 Cal.App.2d 104 [156 P.2d 29], in which it has been held that the fraudulent concealment of an essential fact was sufficient, under the circumstances, to toll the running of a statute of limitations.

The first cause of action is based entirely on a claimed violation of the federal statute, and clearly seeks to recover the statutory overcharge provided for therein. Attorneys' fees are also demanded, as permitted by that statute. No attempt was made to allege any damage otherwise recoverable, to allege the actual value of the properties, or to allege facts complying with the requirement of section 3343 of the Civil Code. While the general demurrers were sustained with leave to amend, the real question presented is whether the requirement that the action be brought within one year is controlling. This action was not filed until some two years and four months after the last of these sales, and one day less than a year after the alleged discovery of the true facts.

A prior action between these same parties, involving these same transactions, was dismissed in the federal court. (*Adams* v. *Albany,* 80 F.Supp. 876.) In that case it was held that this statute conferred special benefits upon a group of persons who could not otherwise claim such benefits, that the right to such benefits was conditioned upon a prompt exercise of that right, and that the right is destroyed by the expiration of the time during which the statute provides it may be exercised. It was further held that the fraudulent concealment alleged was not sufficient, in any event, to toll even a statute of limitations. It was pointed out that the concealment charged was that of the maximum selling price fixed by the housing administrator under authority of federal statutes and regulations; that his action was the official act of a public

officer and his records were open to inspection by all interested parties; that the plaintiffs were charged with knowledge of the statutes and regulations which they set forth as the basis of their claim; that it was not alleged that any act was done by the defendants to prevent the plaintiffs from having access to such records, which would have disclosed the prices fixed; that the facts with respect to concealment were not alleged; and that there was a mere allegation of discovery without any facts showing that an earlier discovery was prevented.

A similar holding appears in *Sedivy* v. *Superior Home Builders, Inc.*, 188 F.2d 729, where it was held that no cause of action was stated since the action was not commenced within the one-year period, as required by the act. Under a similar statute, covering rent control, it was held in *Kravitz* v. *Nankin*, 105 N.Y.S.2d 577, that the time limitation was not extended by allegations of fraud. It was there said:

" 'The gravaman of the plaintiff's cause of action is the alleged overcharges and the statute, section 205 of the Rent Act of 1947, created a cause of action . . . , provided such action be brought within one year from the date of such overpayment. It did not create a cause of action in fraud, and plaintiff derived no common law rights from the statute.' "

The principles of the Scarborough case and other cases relied on by the appellants are not applicable here. ▮ This was not a mere statute of limitations, but a condition upon which a new right was given to a special group, and upon which the exercise of that right depended. No such cause of action for the return of the overcharge existed at common law or otherwise. The allegations of concealment and belated discovery were not only insufficient in themselves, but they could add nothing to the statute which created the benefit and right relied on, and which specially provided that the right so conferred must be exercised within the time specified. We conclude that the demurrer to the first cause of action on this ground was properly sustained without leave to amend.

Briefly stated, the following facts were alleged in the second cause of action. Between May 1, 1946, and December 31, 1947, the defendants fraudulently conspired to obtain priorities for materials and to build houses not in conformity with the plans and specifications submitted with the applications for said priorities, while representing to the plaintiffs that they would build the houses according to these plans and specifications and sell them to plaintiffs at prices not in excess

of their reasonable value. In furtherance of said conspiracy the defendants arranged for the construction, financing and sale of homes in this tract and submitted said plans and specifications to the federal government in making application for such priorities, and such plans and specifications were not delivered to plaintiffs and were not available to them. Upon the representations so made to the federal government the defendants obtained such priorities and used such materials to build homes not in conformity with the plans and specifications thus submitted. The defendants represented to the federal government and to plaintiffs that said houses were to be and were constructed in conformity with these plans and specifications, with materials of a specified quality and in a good and workmanlike manner. . Relying on these representations the plaintiffs, acting individually, purchased homes in this tract from the defendants. In constructing these houses the defendants willfully used inferior and unsuitable materials, omitted many items and materials required by the specifications, and erected said houses in such an unskillful and negligent manner as to cause them to be defective and structurally unsound and entirely unfit for use other than as temporary dwellings. The defendant bank, in concert with its codefendants, certified to the Veterans' Administration that these homes were built in conformity with the plans and specifications submitted, certified that the security required by title III of the Servicemen's Readjustment Act of 1944 had been obtained, and further certified that the purchase price of each of said homes was not in excess of its reasonable value. The bank knew that said certifications were false and were made in violation of the provisions of the Servicemen's Readjustment Act. The plaintiffs, in reliance upon said certifications, and upon representations made to them by the bank, were induced to and did authorize the bank to make payments to its codefendants from plaintiffs' funds. The papers and documents relating to these various transactions were in the possession of the defendants, were not accessible to the plaintiffs, and were concealed from them. The facts relating to said transactions were disclosed to the plaintiffs by agents of the federal government on February 8 and 9, 1948. The houses thus constructed by the defendants have no permanent value other than salvage value. It will be necessary for the plaintiffs to tear down and rebuild said houses in their entirety, using such material as can be salvaged.

These general allegations are followed by specific allega-

tions relating to the house purchased by each of the 40 separate sets of plaintiffs. In each instance it is alleged that on a certain date a specific plaintiff purchased a certain house which defendants represented would be constructed according to certain plans and specifications, and that the house constructed does not conform to those specifications. In each instance some variations from the specifications and some claimed defects in material are specifically alleged, and other defects in quality and workmanship are alleged in general language. The cost of dismantling and rebuilding the house is also alleged, with the cost of securing other accommodations over the period required for such rebuilding. In each instance that set of plaintiffs prays for damages in connection with that transaction, the amounts ranging from about $12,000 to about $23,000, and for an additional $10,000 because of the inconvenience and distress of mind suffered.

General demurrers to that cause of action, and special demurrers on various grounds, were sustained with leave to amend. Another special demurrer on the ground of misjoinder of plaintiffs was sustained without leave to amend.

The appellants contend that the demurrer on the ground of misjoinder of plaintiffs was improperly sustained without leave to amend, with the practical effect of making it impossible for them to amend; that in this action for civil conspiracy and fraud all the plaintiffs have a common interest in the subject of the action and a right of relief arising out of the same transaction or series of transactions; and that questions of law and fact exist, and would exist even if separate actions were brought, which were common to all parties. It is also contended that they were entitled to allege all their causes of action which arose out of the same tort, civil conspiracy and fraud, without separately stating them; and that the demurrers on the ground of unintelligibility, uncertainty and ambiguity were improperly sustained since the facts involved were peculiarly within the knowledge of the defendants.

The respondents contend that the demurrer on the ground of misjoinder of plaintiffs was properly sustained; that 40 sets of plaintiffs bought separate houses under separate contracts on 25 separate dates, and it was alleged that each was "acting individually"; that there was here no "well defined 'community of interest' in the question of law and fact," as was held to be necessary in *Weaver* v. *Pasadena Tourna-*

*ment of Roses Assn.*, 32 Cal.2d 833 [198 P.2d 514]; that the torts here alleged did not take place at the same time and place, with the same persons present, and were separate torts; and that the evidence as to one house would have no probative value as to any other house. It is further contended that separate causes of action were not separately stated; that fraud in the sale of the houses is alleged, which would involve misrepresentation as to existing facts; that fraud based upon promises to construct the houses in a specified manner is also alleged, which would involve promises made without the intention of performing; and that a further attempt is made to state a cause of action against the bank for breach of its duty under the federal statutes, although that duty was to the federal government and not to the plaintiffs as borrowers merely because they happen to be veterans. In support of other rulings on the demurrers it is argued that the second cause of action contained no allegations disclosing the value or selling price of the various houses, and that the claimed defective conditions were alleged only in general terms which failed to disclose what items or materials were omitted, what substitutions of materials were made, and in what respects the plumbing, concrete and other matters failed to comply with the specifications.

■ While these demurrers were sustained with leave to amend, with respect to most of the rulings, they were sustained without leave to amend on the ground of misjoinder of plaintiffs. The practical effect of this was to prevent any amendment insofar as this action is concerned, and to require the filing of 40 separate suits if further litigation of these claims was desired. This ruling was erroneous, and a community interest in the questions of law and fact presented sufficiently appears to meet the statutory requirement and to justify and permit these plaintiffs to join in this action. Section 378 of the Code of Civil Procedure authorizes such joinder where the plaintiffs have a common interest in the subject of the action, where a right to relief arising out of the same transaction or series of transactions is alleged and where, if separate actions were brought any question of law or fact would arise which is common to all the parties to the action. Section 427 of that code permits the uniting of several causes of action where they all arise out of the same transaction or transactions connected with the same subject of action, or where they all arise out of claims for injuries arising out of a conspiracy.

In view of the present wording of these statutes, we do not regard the decision in *Noroian* v. *Bennett*, 179 Cal. 806 [179 P. 158], as controlling here. One scheme is alleged, based on conspiracy and fraud, depending upon the same basic misrepresentations, and leading to a series of transactions exactly similar in kind and manner of operation which have affected all of the plaintiffs. The agreements and instruments involved are for incidental variations in details affecting the different plaintiffs. The controlling questions of law, relating to liability, are the same with respect to each of the plaintiffs. A very large part of the evidence as to one of the series of incidents would be equally applicable to the others. While some of the evidence, as to details and amounts, would vary with respect to the different plaintiffs, no good reason appears in law or in reason to compel the filing of 40 separate actions, with a resulting duplication, that many times, of all of the evidence.

While the allegations of the second cause of action are deficient in many respects, as contended by the respondents and as indicated by the rulings of the court, a cause of action could be stated and no valid reason appears why the plaintiffs should not have been permitted to make proper amendments and to proceed in this action. If they desire to set up separate causes of action these should be separately stated, with the necessary allegations as to each. The making of possible and proper amendments should not have been prevented by sustaining the demurrers on the ground of misjoinder of plaintiffs without leave to amend. Whether or not some of the necessary allegations as against the bank and its officers could be proved is not involved on this appeal.

The judgment is affirmed with respect to the first cause of action, and is reversed with respect to the second cause of action, with instructions to the trial court to permit the plaintiffs to amend within a reasonable time. Each party to pay his own costs.

Griffin, J., and Mussell, J., concurred.

Petitions for a rehearing were denied May 19, 1954, and appellants' petition for a hearing by the Supreme Court was denied June 16, 1954. Carter, J., was of the opinion that the petition should be granted.