FYBEL, J.,
Dissenting. — I respectfully dissent. I would affirm the correct decision of the trial court. The result of the majority’s decision to reverse the trial court will be as breathtaking as it is legally unsupported. The majority is approving the joinder of the claims of some 818 plaintiff home loan borrowers with the claims of the first named plaintiff, John P. Wright, into a single massive lawsuit.[1] This vast joinder of borrowers’ claims is unprecedented under California and federal law.
Joining the claims of so many plaintiffs not only is unprecedented, but also is not justified by the relevant standards and principles governing joinder. Code of Civil Procedure section 378, subdivision (a)(1) (section 378(a)(1)) permits joinder only if two requirements are satisfied: (1) the claims arise out of the same transaction or occurrence and (2) there is a common legal or factual question. Plaintiffs’ third amended complaint (the Complaint) does not come close to satisfying the standards for joinder under section 378(a)(1).
Plaintiffs’ claims did not arise out of the same transaction or occurrence; rather, they arose out of over 1,000 separate and distinct loan and loan modification transactions involving different borrowers, and many third party originators and lenders. The loan transactions were made at different times over a six-year period; some loans were purchase money loans, while other loans refinanced existing ones. Each loan transaction was secured by a different parcel of real property in California and involved a different appraisal. The loans had various terms and were at different interest rates; some were fixed rate loans, while others were variable rate loans. Not all lenders were the same. Each loan transaction involved different loan brokers and agents, who made different representations to each plaintiff.
*257 The majority opinion is in error for the following five principal reasons:
1. Each Loan Transaction Is Distinct. The majority opinion, at a minimum, oversimplifies the Complaint’s allegations in an attempt to find commonality amongst the diverse claims of 818 Appealing Plaintiffs. Although the Complaint alleged Defendants engaged in a scheme to defraud, each of these borrowers entered into a different loan transaction secured by a different parcel of real property and supported by a different appraisal. The majority is mistaken in asserting the lender was the same for each loan, as many lenders were third parties which have not been named as defendants. For many of the Appealing Plaintiffs, the Complaint and its attachments do not include basic information about the loan transaction.
2. Issues of Liability Are Not Subject to Common Proof. The majority opinion asserts that the issues of liability are subject to common proof and individual questions of damages can be addressed through trial court management. The Complaint itself reveals those assertions to be incorrect. As I will explain in detail, Plaintiffs did not allege that a common, uniform set of misrepresentations was made to each of them. Nor have Appealing Plaintiffs argued in any of their briefs or at oral argument that uniform representations were made. Thus, to recover on the cause of action for intentional misrepresentation or the cause of action for negligent misrepresentation, each and every plaintiff — yes, each one of them — will have to submit evidence to prove liability and damages. Likewise, each of the 90 plaintiffs asserting wrongful foreclosure must individually prove the facts specific to him or her establishing that foreclosure procedures were not followed.
Resolving the claims of all 818 Appealing Plaintiffs in a single lawsuit, therefore, definitely would not promote judicial economy and fairness as required by law; quite the contrary, the “megasuit” mandated by the majority promises to be an unjustified administrative nightmare.
3. Analogous Case Law Is Against Joinder. For good reason, courts which have addressed the issue of joinder of borrowers’ claims in the same circumstances presented in this lawsuit have consistently held such attempts at joinder to be improper. In part III, I discuss 11 opinions decided by the United States Courts of Appeals, including the Ninth Circuit, and United States District Courts, including the Central District and Northern District of California. All of them conclude that plaintiff borrowers, who made the same claims as Appealing Plaintiffs, were misjoined because each loan was a separate transaction. Federal law on joinder is the same as California law on joinder. Both in its analysis and conclusion, the majority opinion is in conflict with all of those cases. Instead, the majority relies on the principle of broad construction and uses that principle to stretch section 378(a)(1) past its *258 breaking point. The California appellate cases which, the majority claims, exemplify the application of the principle of broad construction in upholding joinder, arose in very different contexts and had far different facts from those presented in this case. In none of those cases did joinder actually depend on broad construction of section 378(a)(1).
4. This Is Not a Class Action. The majority opinion essentially recasts the Complaint as a class action. Let us be plain upfront: Plaintiffs did not file the Complaint as a class action and the Complaint includes no class or subclass allegations. Plaintiffs did not ask for class certification. The question before the trial court — whether the 965 plaintiffs (including Wright) were misjoined — was an all-or-nothing proposition. Appealing Plaintiffs never argued here or in the trial court that this lawsuit should be treated as a class action or divided into subclasses or subgroups. Indeed, in direct response to questions about subclasses posed at oral argument by my colleagues, Appealing Plaintiffs’ counsel flatly stated the only issue presented was whether Plaintiffs’ claims were properly joined, not whether subclasses could or should be created.
The majority opinion’s treatment of the Complaint is reminiscent of the famous story told by Abraham Lincoln. A boy was asked how many legs his calf would have if he called its tail a leg. The boy replied, “Five.” The correct answer, of course, is four. Calling a calf’s tail a leg “would not make it a leg.” (Rice, Reminiscences of Abraham Lincoln by Distinguished Men of His Time (rev. ed. 1909) p. 242.) Likewise, treating a lawsuit as a class action does not make it one. The issue presented to us is whether the 818 Appealing Plaintiffs were properly joined under section 378(a)(1), not whether or under what circumstances Appealing Plaintiffs should be treated as a class.
5. This Case Should Not Be Treated as a Class Action. The majority advises the parties to use subclasses — a procedure peculiar to class actions— and draws a “direct parallel” with class actions based on supposed commonality on issues of liability, with only damages to be individually calculated. (Maj. opn., ante, at pp. 252-253.) The majority states its decision is without prejudice to whether the Class Action Fairness Act of 2005, 28 United States Code section 1332(d) (CAFA) applies. (Maj. opn., ante, at p. 255.) The majority is telling the trial court and Appealing Plaintiffs this litigation really should be treated as a class action, which could then be divided into the subissues and subclasses revealed by the majority’s reading of the Complaint. How can there be subclasses without a class? .
While counsel for Defendants will be surprised by the majority’s approach, no one will be more surprised than counsel for Appealing Plaintiffs, who have disclaimed the premise on which the majority opinion rests. When asked at *259 oral argument about the possibility of subclasses, Appealing Plaintiffs’ counsel stated the issue presented was whether the trial court erred by denying joinder. The majority erroneously calls this lawsuit a “ ‘mass action’ ” (maj. opn., ante, at p. 241), but that is a term found in CAFA, 28 United States Code section 1332(d)(ll)(B), and Defendants chose not to remove this action to federal court.[2]
The plaintiffs in any civil litigation, including the ones in this case, are deemed to be the masters of their complaint (Aryeh v. Canon Business Solutions, Inc. (2013) 55 Cal.4th 1185, 1202 [151 Cal.Rptr.3d 827, 292 P.3d 871]) and are no less the masters of their litigation strategy. Our system is, after all, an adversarial one. Appealing Plaintiffs are represented by able counsel with years of civil litigation experience who made the strategic decisions to draft the Complaint as they did and to pursue Plaintiffs’ claims in a particular way. Plaintiffs chose not to bring a class action and chose not to separate themselves into subclasses or subgroups. It is not appropriate for us to second-guess those decisions and give unsolicited advice purporting to tell Appealing Plaintiffs the best way for them to draft their own complaint and pursue their own claims.
It bears repeating that the only issue before us on the appeal from the judgment of dismissal is whether the statutory requirements for joinder are satisfied based on the allegations of the Complaint. The trial court, after fully considering the relevant factors and issues, was correct to sustain, without leave to amend, Defendants’ demurrer to the Complaint. Any Appealing Plaintiff is free to file his or her own lawsuit, including a representative action under California’s unfair competition law.
I.
Allegations
A.
Overview of the Complaint
The Complaint is 210 pages in length, and, in addition, has a 1,772-page appendix and attaches 1,259 pages of title and loan documents. Allegations specific to each plaintiff were made in appendix A to the Complaint.
The Complaint asserted four causes of action: (1) intentional misrepresentation, (2) negligent misrepresentation, (3) unfair competition in violation of *260 Business and Professions Code section 17200 et seq., and (4) wrongful foreclosure. All Plaintiffs sought damages for intentional misrepresentation and negligent misrepresentation. Of the 965 Plaintiffs, 90 were parties to the wrongful foreclosure cause of action.
B.
The Parties
1. Plaintiffs
All 965 Plaintiffs are California residents. The Complaint alleged each plaintiff “borrowed money from one or more of the Defendants or its subsidiaries or affiliates or successors and assigns between January 1, 2003, and December 31, 2008, secured by a deed of trust on his or her California real estate(s)” and “one or more of the Defendants have acted as Servicer or some other control or capacity over processing the loan.”
Appendix A and the exhibits show Plaintiffs’ claims arose from about 1,100 loan and loan modification transactions over the six-year period from January 1, 2003, through December 31, 2008. As to 154 plaintiffs, appendix A to the Complaint did not identify basic information such as the lender, the location of the secured real property, the amount of the loan, or the status of the loan.
2. Defendants
Countrywide and its founder and chief executive officer, Angelo Mozilo, were alleged to have devised the massive fraudulent scheme that is the subject of the Complaint. Countrywide Home Loans was the mortgage banking subsidiary of Countrywide.
LandSafe, Inc., was a wholly owned subsidiary of Countrywide. The Complaint alleged, “Land[S]afe Appraisals is a division of Land[S]afe, which conducted the appraisals of Plaintiffs.”
B of A acquired Countrywide in 2008. Countrywide was merged into B of A, which absorbed and took over Countrywide’s operations and employees. The Complaint alleged B of A conducted the business formerly conducted by Countrywide and “ha[s] continued the unlawful practices of Countrywide since October 31, 2007, including . . . writing fraudulent mortgages.”
ReconTrust Company, N.A., was a wholly owned subsidiary of B of A and acted as trustee under the deeds of trust securing real estate loans held or *261 serviced by B of A. The Complaint alleged, “B of A . . . and the other Bank Defendants . . . have regularly used ReconTrust to foreclose, as trustee with power of sale, trust deeds on California realty.” CTC Real Estate Services was alleged to have “acted alongside and in concert with B of A in carrying out the concealment described herein . . . .”
C.
General Allegations
The underlying theory of the Complaint is Defendants ceased acting as conventional lenders and instead “morphed into an enterprise engaged in systematic fraud upon its borrowers.” The Complaint alleged that Defendants engaged in “a massive and centrally directed fraud” by which they placed homeowners into loans which Defendants knew they could not afford (and on which the homeowners inevitably would default), abandoned industry-standard underwriting guidelines, and engaged in a market-fixing scheme by using inflated appraisals to artificially raise home prices throughout California.
According to the Complaint, the reason why Defendants were able to carry out this scheme was that they securitized the loans and sold them in bulk to “unsuspecting” third party investors at a hefty profit. Since Defendants intended to sell the loans, rather than hold them and earn profit from the interest generated, they allegedly no longer had an incentive to follow, and intentionally abandoned, sound underwriting standards. Defendants allegedly used intentionally inflated appraisals to justify the size of the loans, and the artificially inflated real estate values in turn allowed Defendants to continue to generate more inflated loans that could be securitized and sold in bulk to investors.
Not all loans were originated by Defendants, and the Complaint alleged, with no factual detail, that unnamed third party banks and lenders “acted at the behest and direction of the Countrywide Defendants, or agreed to participate — knowingly or unknowingly — in the fraudulent scheme.”
D.
Causes of Action of the Complaint
1. Intentional Misrepresentation
In the first cause of action, for intentional misrepresentation, Plaintiffs alleged Defendants, “through Defendants’ securities filings, speeches, advertisements, public utterances, websites, brokers, loan consultants, branches, *262 communications with clients, and other media,” made a series of partial misrepresentations creating a duty to “speak the whole truth” and to disclose material facts. These eight partial misrepresentations included:
1. The borrower’s loan payment would be for a specified sum, “when in reality such payment was only available for a limited undisclosed period of time and would then drastically increase.”
2. The amount of payments under the loan would be “constant” and the borrower would be able to afford those payments, when in reality the loan payments later would increase and the borrower would not be able to afford those payments.
3. The borrower qualified for the loan, when in reality the borrower only qualified because Defendants falsified income and asset documentation.
4. Countrywide loaned money in conformance with its underwriting guidelines, and that its lending standards were safe.
5. The borrower’s loan payment would cover both principal and interest, when in reality the payments would not cover principal and would not cover the minimum interest on the loan resulting in deferred interest.
6. By making the minimum payment on an adjustable rate mortgage loan (ARM), the borrower might defer interest when, in reality, making the minimum payment definitely would result in deferred interest.
7. Payment schedules created the false impression that by making the recommended payments, borrowers would not negatively amortize their loans.
8. By making the minimum payment during the initial interest rate period of an ARM, borrowers would be paying both interest and principal, when in reality they would be paying neither, resulting in negative amortization.
In addition to those partial misrepresentations, the Complaint alleged Defendants made a series of affirmative misrepresentations “through Defendants’ securities filings, speeches, advertisements, public utterances, websites, brokers, loan consultants, branches, and communications with clients and other media.” The 13 affirmative misrepresentations included:
1. The borrowers could afford their loans.
2. Defendants’ calculations confirmed that the borrowers could afford their loans and could “shoulder the additional debt resulting from Defendants’] loans, in light of Plaintiffs’ other debts and expenses.”
*263 3. A borrower’s qualification for a loan was the same as being able to afford a loan.
4. By making the minimum payment on an ARM, the borrower would not be deferring interest and would be paying both principal and interest.
5. “[T]he value arrived at by Defendants’ appraisals of Plaintiffs’ property was indeed the true value of Plaintiffs’ property.”
6. “[T]he value arrived at by Defendants’ appraisals of Plaintiffs’ property was sufficient to justify the size of the loan they were being given.”
7. The actual terms of the loans, including the interest rate, whether the loan was variable or fixed, the duration of any fixed period, and the inclusion of a prepayment penalty.
8. Defendants followed their own underwriting guidelines and made loans only to qualified borrowers.
9. Defendants were financially sound.
10. “Defendants were engaged in lending of the highest caliber.”
11. The loans offered by Defendants were “safe and secure.”
12. The borrowers would be able to refinance their loans at a later time.
13. Defendants would modify the borrowers’ loans.
The Complaint alleged that in justifiable reliance on these partial and affirmative misrepresentations, Plaintiffs entered into loan and mortgage transactions into which they otherwise would not have entered, and which they could not afford from the outset or could not afford once the variable rate feature or balloon payment took effect. The Complaint did not allege the claimed 21 misrepresentations, or any combination of them, were uniformly made to all 965 Plaintiffs. As shown by appendix A and the exhibits to the Complaint, each of these loan and loan modification transactions was distinct.
2. Negligent Misrepresentation
The second cause of action, for negligent misrepresentation, was based on the same misrepresentations that formed the basis for the intentional misrepresentation cause of action, but alleged those misrepresentations were made negligently.
*264 3. Unfair Competition
The third cause of action asserted unfair competition in violation of the unfair competition law, Business and Professions Code section 17200 et seq. The unfair competition cause of action alleged Defendants’ alleged massive scheme of fraud and Defendants’ fraudulent misrepresentations to Plaintiffs were fraudulent, unfair, and violated “numerous federal and state statutes and common law protections enacted for consumer protection, privacy, trade disclosure, and fair trade and commerce.”
In the unfair competition cause of action, Plaintiffs alleged they suffered financial injury including “loss of equity in their houses, costs and expenses related to protecting themselves, reduced credit scores, unavailability of credit, increased costs of credit, reduced availability of goods and services tied to credit ratings, increased costs of those services, as well as fees and costs, including . . . attorneys’ fees and costs.” As a remedy for unfair competition, Plaintiffs sought injunctive relief and restitution.
4. Wrongful Foreclosure
Ninety plaintiffs asserted a fourth cause of action for wrongful foreclosure in violation of Civil Code section 2924. The Complaint set forth the basis for the wrongful foreclosure claim for each of these 90 plaintiffs.
II.
Legal Standards Governing Joinder
Code of Civil Procedure section 378 provides that parties to an action may be joined as plaintiffs if their right to relief arises from the “same transaction, occurrence, or series of transactions or occurrences” and there is “any question of law or fact common to all.” (§ 378(a)(1).)[3] “Thus, in order to be joined together as plaintiffs in a lawsuit, plaintiffs must satisfy two requirements: (1) they must allege the same transaction or occurrence and (2) a common legal or factual question.” (State Farm Fire & Casualty Co. v. Superior Court (1996) 45 Cal.App.4th 1093, 1112-1113 [53 Cal.Rptr.2d 229], *265 italics added (State Farm), disapproved on another ground in Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co. (1999) 20 Cal.4th 163, 184-185 [83 Cal.Rptr.2d 548, 973 P.2d 527].)
Code of Civil Procedure section 378 is based on rule 20 of the Federal Rules of Civil Procedure (28 U.S.C.) (Rule 20). (Rodriguez v. Bethlehem Steel Corp. (1974) 12 Cal.3d 382, 407, fn. 28 [115 Cal.Rptr. 765, 525 P.2d 669].) Rule 20(a)(1) provides: “(1) Plaintiffs. Persons may join in one action as plaintiffs if: [][] (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and [¶] (B) any question of law or fact common to all plaintiffs will arise in the action.”
In determining what constitutes a “transaction” or “occurrence” under Rule 20(a)(1)(A), federal courts have looked to rule 13(a) of the Federal Rules of Civil Procedure (28 U.S.C.), which governs compulsory counterclaims. (Alexander v. Fulton County, Georgia (11th Cir. 2000) 207 F.3d 1303, 1323, overruled on another ground in Manders v. Lee (11th Cir. 2003) 338 F.3d 1304, 1328, fn. 52.) “For the purposes of Rule 13(a), ‘ “[transaction” is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.’ ” (Alexander v. Fulton County, Georgia, supra, at p. 1323, quoting Moore v. N. F Cotton Exchange (1926) 270 U.S. 593, 610 [70 L.Ed. 750, 46 S.Ct. 367].)
The ultimate consideration in assessing joinder of plaintiffs under Rule 20 is whether the claims are so logically connected that resolving all issues in one lawsuit would promote judicial economy and fairness. As phrased by the United States Court of Appeals for the Second Circuit: “In determining whether a claim ‘arises out of the transaction . . . that is the subject matter of the opposing party’s claim’, this Circuit generally has taken a broad view, not requiring ‘an absolute identity of factual backgrounds ... but only a logical relationship between them.’ [Citation.] This approach looks to the logical relationship between the claim and the counterclaim [citation] and attempts to determine whether the ‘essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.’ [Citation.]” (U.S. v. Aquavella (2d Cir. 1979) 615 F.2d 12, 22; see Abraham v. American Home Mortgage Servicing, Inc. (E.D.N.Y. 2013) 947 F.Supp.2d 222, 228-229 (Abraham); Peterson v. Regina (S.D.N.Y. 2013) 935 F.Supp.2d 628, 637.) “[T]he central purpose of Rule 20 is to promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits.” (Alexander v. Fulton County, Georgia, supra, 207 F.3d at p. 1323; see Coughlin v. Rogers (9th Cir. 1997) 130 F.3d 1348, 1351 [“Rule 20 is designed to promote judicial economy, and reduce inconvenience, delay, and added expense.”].)
*266 III.
Plaintiffs’ Claims Did Not Arise from the Same Transaction or Occurrence or Series of Transactions or Occurrences.
Appealing Plaintiffs assert that all of their claims for relief arise from the same transaction or occurrence or series of transactions or occurrences because “the gravamen” of their lawsuit is “the fraudulent scheme common to all Plaintiffs” and “the harms alleged by Plaintiffs herein were the common result of Defendants [’] practices and policies.” (Boldface omitted.) A demurrer is treated as admitting all material facts properly pleaded (Moe v. Anderson (2012) 207 Cal.App.4th 826, 830-831 [143 Cal.Rptr.3d 841] (Moe) and, therefore, the facts alleged of a massive and systematic fraud perpetrated by Defendants are deemed true.
But, on its face, the Complaint, along with the appendix and exhibits, shows Plaintiffs’ claims arose from over 1,000 separate and distinct loan and loan modification transactions. The appendix and the exhibits disclose the transactions involved different borrowers, a number of third party originators and lenders, and many different loan brokers and officers in different locations.
The loan transactions were made at different times over a six-year period stretching from 2003, a time of prosperity, through 2008, at the peak of the financial crisis. Some loans were purchase money loans, while other loans refinanced existing ones. Each loan transaction was secured by a different parcel of real property in California and involved a different appraisal. The loans had various terms and were made at different interest rates; some were fixed rate loans while others were variable rate loans. As Defendants point out, as to 154 plaintiffs, the Complaint did not identify the lender, the location of the secured property, the loan amount, the type of loan, or the status of the loan.
Contrary to the majority’s assertion, not all Appealing Plaintiffs had the same lender. Many had third party lenders, with names such as Millennium Mortgage Corp., Brooks America Mortgage Corporation, Global Lending, Maverick, Hilsborough Corporation, PacificPan Mortgage, J&R Lending, Inc., and Dynamic Mortgage Financial Corporation.
The claims of each plaintiff arose out of discrete facts and circumstances related to that plaintiff’s particular loan transaction. Such claims are not connected to each other and not susceptible to common proof.
*267 Plaintiffs have alleged three causes of action that seek damages: intentional misrepresentation, negligent misrepresentation, and wrongful foreclosure.[4] Significantly, Appealing Plaintiffs did not allege, nor do they argue, that Defendants uniformly made the same misrepresentations to each plaintiff by the same person, or even through the. same medium. Instead, Plaintiffs broadly alleged Defendants made misrepresentations through their “securities filings, speeches, advertisements, public utterances, websites, brokers, loan consultants, branches, and communications with clients, and other media.”
Which misrepresentations, if any, were made to a particular plaintiff, by whom, and through which medium, would have to be proven individually. To establish liability for intentional misrepresentation and negligent misrepresentation, each of the more than 818 Appealing Plaintiffs would have to prove the specific representations made to him or her, prove the representation was false, and prove reliance on that representation. “[Isolating” (maj. opn., ante, at p. 246) the various representations into thematic subgroups or discrete, manageable categories, as the majority directs Plaintiffs to do, would not solve the proof problem.
For those reasons, the majority is, I believe, mistaken in concluding this is a case in which issues of liability are subject to common proof, leaving only damages to be individually proven and calculated. Even were the allegations that Defendants perpetrated a massive and systematic fraud proven, in order to recover damages, each Plaintiff would still have to prove the essential facts of his or her own case. That proof would need to include he or she relied on fraudulent or negligent misrepresentations to his or her detriment, the loan was unsuited to him or her, the value of his or her home was inflated due to Defendants’ actions and not some other cause, the appraisal used was in fact inflated, and he or she suffered damages from the inflated value. Each of the 90 plaintiffs alleging wrongful foreclosure would have to prove individually how and why the foreclosure of his or her deed of trust was wrongful.
Federal courts have addressed joinder of the claims of massive numbers of plaintiff borrowers under the same or similar circumstances and theories of recovery. Those courts consistently have concluded that groups of plaintiffs who were pursuing claims based on individual mortgage transactions were misjoined. In Visendi v. Bank of America, N.A. (9th Cir. 2013) 733 F.3d 863, 866 (Visendi), the United States Court of Appeals for the Ninth Circuit addressed whether 137 plaintiffs, who had sued 25 financial institutions, were misjoined. The plaintiffs alleged the defendants’ deceptive mortgage lending and securitization practices diminished the value of their homes, impaired their credit scores, and compromised their privacy. (Ibid.) The plaintiffs *268 asserted eight causes of action, including rescission, fraud, and negligent misrepresentation. (Ibid.) The Ninth Circuit concluded the allegations lacked the factual similarity required for joinder under Rule 20(a)(1)(A): “This case involves over 100 distinct loan transactions with many different lenders. These loans were secured by separate properties scattered across the country, and some of the properties, but not all, were sold in foreclosure. While Plaintiffs allege in conclusory fashion that Defendants’ misconduct was ‘regular and systematic,’ their interactions with Defendants were not uniform. Factual disparities of the magnitude alleged are too great to support permissive joinder.” (Visendi, supra, at p. 870.)
In Barber v. America’s Wholesale Lender (M.D.Fla. 2013) 289 F.R.D. 364, 365 (Barber), the complaint asserted claims by at least 18 different borrowers against at least nine different lenders arising out of 15 separate mortgages entered into with 10 different lenders. The plaintiffs alleged they mistakenly believed they were entering into a “traditional borrower/lender relationship with Defendants” when in fact the loans were “ ‘conduit’ loans” that were to be pooled into mortgage-backed investment vehicles. (Id. at p. 366.) The plaintiffs also alleged they suffered harm when their loans were sold to third party investors as part of the securitization process. (Ibid.) The district court concluded the plaintiffs were misjoined, even though their claims raised similar legal issues, because “each individual loan made by a Defendant to a Plaintiff was a separate ‘transaction’ or ‘occurrence.’ ” (Id. at p. 367.)
In Abraham, supra, 947 F.Supp.2d at page 226, the plaintiffs were several hundred current and former homeowners who sued several dozen mortgage originators and servicers. The plaintiffs alleged the defendants induced them to enter into mortgages based on inflated appraisals; failed to comply with underwriting guidelines; purposefully avoided local recordation statutes; bundled, packaged, and sold their mortgages to investors “while simultaneously betting against those mortgages”; and failed to use federal funds to help the plaintiffs as required by law. (Id. at pp. 226, 227.) As a result, the plaintiffs claimed, they lost equity in their homes, suffered damages to their credit ratings, and incurred unnecessary costs and expenses. (Ibid.) The plaintiffs asserted various tort causes of action, including fraud, deceit, fraudulent concealment, and intentional and negligent misrepresentation. (Id. at p. 226.)
The district court granted the defendants’ motion to dismiss based on misjoinder under Rule 20. (Abraham, supra, 947 F.Supp.2d at pp. 226, 228-230.) The court concluded the “ ‘ “essential facts of the various claims” ’ ” were not “ ‘ “logically connected” ’ ” because “ ‘[t]he facts surrounding each loan transaction are separate and distinct.’ ” (Id. at pp. 228-229.) Citing a series of other district court decisions, the Abraham *269 court concluded, “[i]t is well established that separate loan transactions by different lenders do not constitute a single transaction or occurrence and claims by plaintiffs who engaged in those separate transactions generally cannot be joined in a single action.” (Id. at p. 229.) “Here,” the court stated, “several hundred Plaintiffs have asserted claims against several dozen mortgage originators and service[r]s regarding different mortgages issued in different states over a nine year period. [Citation.] . . . Plaintiffs’ separate mortgage transactions do not constitute a single transaction or occurrence under Rule 20 . . . .” (Ibid.) The court also concluded the plaintiffs’ allegations the defendants were involved in a common scheme were unsupported and speculative, and insufficient to establish a related series of transactions or occurrences so as to permit joinder. (Id. at pp. 229-230, 233-234.)
On point is Padron v. OneWest Bank (C.D.Cal., Apr. 7, 2014, No. 2:14-cv-01340-ODW (Ex)) 2014 U.S.Dist. Lexis 47947, page *7 (Padrón), a “mass action” that had been removed under CAPA to federal court. In Padrón, the federal district court addressed the issue of joinder of plaintiffs in a lawsuit alleging a theory of a systematic scheme to defraud carried out by the defendants that is similar, if not identical, to that alleged in this case. In Padrón, 121 plaintiffs, who joined in a CAFA mass action, alleged, as Plaintiffs do in this case, that the defendants, which included the lender, mortgage servicers, the Federal Deposit Insurance Corporation, and a real estate appraiser, “ ‘had ceased acting as conventional money lenders and instead morphed into an enterprise engaged in systematic fraud upon its borrowers.’ ” (Padron, supra, 2014 U.S.Dist. Lexis 47947 at pp. *5-*6.) The plaintiffs alleged the defendants placed them into loans the defendants knew the plaintiffs could not afford, abandoned industry-standard underwriting guidelines, concealed or misrepresented the loan terms to induce consent, and intentionally inflated appraisal values through a compliant appraisal company — “ ‘knowing that their scheme would cause the precipitous decline in values of all homes throughout California.’ ” (Id. at p. *6.) Attached to the plaintiffs’ complaint was a 264-page appendix providing a factual summary for each plaintiff. (Id. at pp. *6-*7.)
The district court dismissed all the plaintiffs except for the first one on the ground they had not satisfied the joinder requirements of Rule 20(a). (Padron, supra, 2014 U.S.Dist. Lexis 47947 at pp. *5, *8-*9.) The court found the action to be “virtually identical to Visendi” in that the plaintiffs alleged the defendants had a common scheme, conspiracy, or policy to intentionally place them into dangerous loans, misrepresent the mortgage terms, artificially inflate appraisal prices, and engage in sham loan modifications. (Id. at pp. *12-*13.) The court agreed with the defendants that “ ‘the evocation of the vague strategy, scheme, or “conspiracy” cannot transcend the reality that each Plaintiff’s transaction is discrete, unique, and based on Plaintiff-specific *270 facts and circumstances.’ ” (Id. at p. *13.) The court found no common issues of law or fact, stating, “it appears the only glue holding Plaintiffs’ disparate claims together is the fact that each involves a mortgage, and the Court will therefore have to address legal questions related to each mortgage.” (Id. at p. *14.)
Visendi, Barber, Abraham, and Padron support the conclusion that each of the mortgage transactions that are the subject of the Complaint is a separate, distinct transaction. The district court in Padrón addressed the matter of joinder in a complaint that appears to be a virtual copy of the one pleaded in this case. Granted, those federal cases are not controlling and can be distinguished in some respects. Any distinctions do not detract, however, from the central point of direct analogy; Hundreds of mortgage transactions, of different types, made by hundreds of borrowers, with various originators and lenders, with differing interest rates and terms, made over a six-year period stretching from times of economic prosperity to near collapse of the financial system, constitute separate and distinct transactions that do not arise out of the same transaction or occurrence or series of transactions or occurrences.
Visendi, Barber, Abraham, and Padrón are but the tip of the iceberg. Many other federal decisions from across the nation have reached the conclusion that similar claims made by home loan borrowers are not susceptible to joinder, for example:
—D’Angelis v. Bank of America, N.A. (E.D.N.Y., Jan. 16, 2014, No. 13-CV-5472(JS)(AKT)) 2014 U.S.Dist. Lexis 6087, page *7. (“Here, Plaintiffs’ claims do not arise out of the same transaction or occurrence. This case involves eight different lenders and over 100 discrete loans secured at different times for separate properties across twenty-eight different states.”)
—Martin v. Bank of America, N.A. (E.D.N.Y., Mar. 12, 2014, No. 13 Civ. 02350 (ELG) (SMG)) 2014 U.S.Dist. Lexis 32231, pages *4, *10-*13, *15 — *16. (District court grants motion to sever claims brought by 119 plaintiff borrowers.)
—Garner v. Bank of America Corp. (D.Nev., May 13, 2014, No. 2:12-CV-02076-PMP-GWF) 2014 U.S.Dist. Lexis 66203, page *10. (“While Plaintiffs here allege in some detail an overarching conspiracy and coordinated conduct, which the Visendi plaintiffs apparently did not allege or alleged only in conclusory fashion, Plaintiffs’ claims nevertheless will entail individualized inquiry, such as what representations were made to them by their respective loan officers and whether each Plaintiff justifiably relied on those alleged misrepresentations.”)
*271 —Kalie v. Bank of America Corp. (S.D.N.Y. 2013) 297 F.R.D. 552, 555, 557. (District court granted motion to sever claims brought by 16 plaintiffs because each of them “entered into a different loan transaction at a different time . . . relate[d] to a distinct property.”)
—Gonzalez v. Bank of America, N.A. (N.D.Cal., Aug. 24, 2012, No. 12-1007-SC) 2012 U.S.Dist. Lexis 120702, pages *4-*5. (Thirty plaintiffs were improperly joined because their claims arose out of at least 26 loan transactions.)
—Richards v. Deutsche Bank National Trust Co. (C.D.Cal., Aug. 15, 2012, No. CV 12-4786 DSF (RZx)) 2012 U.S.Dist. Lexis 115302, page *2. (“The test for permissive joinder is not met in this case as each Plaintiff’s claim involves a different loan transaction and foreclosure. Plaintiffs’ wholly unsupported and speculative allegation that the various Defendants conspired to defraud each individual Plaintiff . . . does not satisfy the requirement that Plaintiffs’ claims arise out of the same transaction, occurrence, or series of occurrences, nor does it obviate the need for separate proof as to each individual claim.” (citation omitted).)
—Martinez v. Encore Credit Corp. (C.D.Cal., Sept. 30, 2009, No. CV 09-5490 AHM (AGRx)) 2009 U.S.Dist. Lexis 96662, pages *5 — *6. (Improper joinder of 19 plaintiffs with claims arising out of distinct facts involving mortgages on 15 separate properties.)
The Complaint in this case is not distinguishable in any meaningful way from the complaints found by these federal courts to be based on misjoinder of plaintiffs, except in one respect — size. The Complaint in this case, with 965 plaintiffs, 818 of whom have appealed, dwarfs even the largest of the federal lawsuits.
IV.
“Broad Construction” of Code of Civil Procedure Section 378 Does Not Justify Joinder of 818 Appealing Plaintiffs.
In concluding joinder is proper, the majority emphasizes that Code of Civil Procedure section 378 must be broadly or liberally construed. While that is an undisputed proposition (State Farm, supra, 45 Cal.App.4th at p. 1113; see Kraft v. Smith (1944) 24 Cal.2d 124, 129 [148 P.2d 23] [“ ‘statutes relating to joinder should be liberally construed . . .’ ”]), broad construction is not a substitute for rigorous application of the statutory standards to the Complaint. Section 378 cannot be construed broadly or liberally enough to justify joinder of the claims of the 818 Appealing Plaintiffs in this case. As a panel of this *272 court has said, albeit in a different context, “liberal construction can only go so far.” (Soria v. Soria (2010) 185 Cal.App.4th 780, 789 [111 Cal.Rptr.3d 91].)
According to the majority, broad construction of Code of Civil Procedure section 378 is exemplified by four California appellate court opinions upholding joinder. I will analyze each of them and explain why none of those cases supports the majority’s conclusion. In Anaya v. Superior Court (1984) 160 Cal.App.3d 228, 231 [206 Cal.Rptr. 520] (Anaya), some 218 employees and their family members joined, in a single lawsuit, their claims they suffered injuries from exposure to hazardous chemicals while working for the defendants over a period of 20 to 30 years. The Court of Appeal held the plaintiffs were properly joined, stating: “The employees are said to have been exposed to harmful chemicals at one location over a period of many years by inhalation, drinking of water, and physical contact. Thus, they were all involved in the same series of transactions or occurrences and assert rights to relief therefrom. The fact that each employee was not exposed on every occasion any other employee was exposed does not destroy the community of interest linking these petitioners.” (Id. at p. 233.)
The majority finds Anaya instructive because in that case issues of liability were common while the differences between each plaintiff’s claim were limited to individual damages. In Anaya, supra, 160 Cal.App.3d at page 233, the employees suffered injury by exposure to the same harmful chemicals at the same location while working for the same employer. In marked contrast, in this case, the issues of liability are not common. As I have explained, even if Plaintiffs proved their allegations that Defendants engaged in a mass and systematic fraud, each of the hundreds of Plaintiffs nonetheless would have to prove liability as to him or her. Plaintiffs, who are related only by the fact they live in California, entered into hundreds of different loan transactions, each secured by different real property, through a variety of brokers and agents, who made differing sets of representations, and the loans were funded by many lenders. Putting aside the difficulties in comparing a toxic tort action with a breach of contract/secured real property/business tort action, the analogy between Anaya and this case is inapt.
The majority also posits that Anaya supports joinder in this case because the Anaya court emphasized that Code of Civil Procedure section 378 permits joinder when “ ‘any question of law or fact common to all’ plaintiffs will arise.” (Anaya, supra, 160 Cal.App.3d at p. 233.) Such an interpretation of section 378 relates to the second requirement of section 378(a)(1) and ignores the first. If joinder could be accomplished whenever any single common question of law or fact arises, then the scope of section 378 would be boundless and untethered to a requirement of section 378(a)(1) that the right *273 needs to be “in respect of’ or “arising out of the same transaction, occurrence, or series of transactions or occurrences.”
As another example of broad construction, the majority offers Moe, supra, 207 Cal.App.4th at pages 827-828, in which two patients alleged they were victims of separate sexual assaults committed by a physician. The patients and their husbands sued the physician and his two employers for medical malpractice, battery, and various other torts. (Id. at p. 828.) The trial court sustained a demurrer without leave to amend based on misjoinder of plaintiffs, and the Court of Appeal affirmed as to the physician. (Ibid.) The Moe court concluded the events alleged did not constitute a single transaction because two sets of plaintiffs were suing for “separate and distinct sexual assaults during separate and distinct time periods.” (Id. at p. 833.) “[T]he gravamen of plaintiffs’ claims against [the physician] is the harmful sexual touching that was perpetrated against each victim on separate occasions.” (Id. at p. 834.) But as to the defendant employers, the court held the plaintiffs were properly joined because the claims against the employers arose from the same related series of transactions — the negligent hiring and supervision of the physician. (Id. at p. 835.)
Moe is apt, the majority says, because, here, as in that case, “there is much in the way of common evidence and theories of liability . . . .” (Maj. opn., ante, at p. 251.) But Moe bears no similarity factually or legally to this case and provides no assistance in identifying what that common evidence or those common theories might be.
Particularly instructive, according to the majority, are State Farm, supra, 45 Cal.App.4th 1093, and Adams v. Albany (1954) 124 Cal.App.2d 639 [269 P.2d 142] (Adams). In State Farm, supra, 45 Cal.App.4th at pages 1098-1099, the Court of Appeal held the claims of 165 plaintiffs against their insurers were properly joined in a single action. The plaintiffs alleged the insurers had engaged in a systematic practice to deceive their insureds regarding the purchase of earthquake insurance. (Id. at p. 1113.) The plaintiffs alleged the insurers, without adequate notice of a reduction in the scope of coverage, issued policies of earthquake coverage to replace endorsements to coverage without a change in premium. (Ibid.) In addition, the complaint alleged systematic claims handling practices. (Ibid.) The Court of Appeal concluded those allegations established, at least at the pleading stage, proper joinder of the plaintiffs under Code of Civil Procedure section 378. (State Farm, supra, at p. 1114.)
In State Farm, supra, 45 Cal.App.4th at page 1113, each plaintiff purchased the same homeowners insurance policy with identical earthquake coverage from the same insurer, and were allegédly defrauded in precisely the *274 same way. That is not the case here. The majority notes that the plaintiffs in State Farm alleged they suffered 15 different types of improper claims handling processes, and “[i]f the joinder of a wide variety of claims handling practices was appropriate under State Farm, the joinder of various forms of loan impropriety here seems equally correct.” (Maj. opn., ante, at p. 251.)
The State Farm court concluded joinder was proper, however, both because the plaintiffs alleged the insurers engaged in systematic claims handling practices and because they issued policies reducing the scope of coverage without adequate notice. (State Farm, supra, 45 Cal.App.4th at p. 1113.) The allegations of the latter practice, the court stated, “clearly reflect a claim containing common facts central to the alleged deception.” (Ibid.) As for the former practice, the complaint alleged the defendants engaged in 15 different claims handling practices as to all the plaintiffs. (Id. at pp. 1099-1100.) The Court of Appeal noted that “[w]hile not every plaintiff may have been victimized by the same claims handling practice, that is a matter which can be resolved in discovery . . . .” (Id. at p. 1113.) In other words, the complaint itself alleged claims handling practices common to all the plaintiffs. Since the Court of Appeal was addressing the trial court’s order overruling a demurrer, the allegations of the complaint had to be accepted as true, with the proviso that the claims could be sorted out in discovery. Here, the differences between the claims of each of the Appealing Plaintiffs are apparent from the face of the Complaint and its attachments, and Plaintiffs have neither alleged nor argued a systemic set of misrepresentations made uniformly to each of them.
In Adams, supra, 124 Cal.App.2d at page 640, each plaintiff entered into the same contract with the same developer, who allegedly overcharged them and failed to build their homes in conformity with the same required plans and specifications. All the homes were part of the same subdivision, each of the transactions was “exactly similar in kind and manner of operation,” and the same misrepresentations were made to each of the plaintiffs. (Id. at p. 647.) The agreements and instruments involved differed only “for incidental variations in details.” (Ibid.) The facts of Adams are not even remotely similar to the allegations of the Complaint in this case.
None of these cases — Anaya, Moe, State Farm, or Adams — supports joinder of the 818 Appealing Plaintiffs into a single lawsuit under a broad construction of Code of Civil Procedure section 378. In none of these cases was broad construction the driving force behind the Court of Appeal’s decision to uphold joinder. In each case, the Court of Appeal, though noting the principle of broad construction, applied the standards of section 378 or its statutory predecessor to the facts at hand to reach a conclusion.
*275 The majority argues this case is merely a “quantitatively” larger version of Anaya, Moe, State Farm, and Adams. (Maj. opn., ante, at p. 252.) But, as I have explained, the facts and allegations of those cases are not qualitatively similar in the remotest way to the allegations of the Complaint. It makes far more sense to turn for guidance to authority that is qualitatively similar to this lawsuit. We have such authority in abundance: Visendi, Barber, Abraham, Padrón, and the host of other federal cases dealing with the very issues presented by this appeal. That authority squarely demonstrates the trial court did not err by concluding Appealing Plaintiffs were misjoined. The majority attempts to distinguish Visendi, Barber, and Abraham in a footnote by describing them as “merely mak[ing] the point that genuinely multiple defendants do not fall within the federal permissive joinder rule.” (Maj. opn, ante, at p. 252 & fn. 17.) The majority’s characterization of those cases is inaccurate and unduly dismissive. Indeed, as shown, the federal permissive joinder rule is the same as California's.
V.
Providing Litigation Strategy to Appealing Plaintiffs Is Neither Appropriate nor Warranted.
The majority offers advice for dealing with a lawsuit of the 818 Appealing Plaintiffs. The majority advises Appealing Plaintiffs’ counsel to go back and redraft the “desultory and scattered” allegations of the Complaint into something briefer and to include subclasses to make the case more manageable. (Maj. opn., ante, at p. 254.) The Complaint does not suffer from lack of organization, certainty, thoroughness, or clarity. The Complaint is indeed lengthy, particularly with the attachments, but the length is directly attributable to the enormous number of plaintiffs joined, the causes of actions asserted, and the nature of the fraudulent scheme alleged.
More importantly, Appealing Plaintiffs did not ask for our advice in drafting the Complaint, and it is not ours to give. Appealing Plaintiffs are the masters of the Complaint, and we must accept the Complaint’s allegations “at face value” (Aryeh v. Canon Business Solutions, Inc., supra, 55 Cal.4th at p. 1202), including its organization, length, and theories and modes of recovery asserted. Based on the Complaint, as presented to us, we must decide only whether joinder was proper.
The majority asserts, “the ability to organize class actions into appropriate subclasses” is “important for our purpose here.” (Maj. opn., ante, at p. 254.) Subclasses are an important tool for making class actions more efficient (Vasquez v. Superior Court (1971) 4 Cal.3d 800, 821 [94 Cal.Rptr. 796, 484 P.2d 964]) but, as I emphasized at the outset, this is not a class action. *276 Plaintiffs chose not to bring a class action. At oral argument, Appealing Plaintiffs’ counsel confirmed this was not a class action and the creation of subclasses was not an issue on appeal. The majority’s speculation as to what Plaintiffs should have alleged is, in my view, inappropriate and is an ill-advised advisory opinion. The majority’s suggestion that Appealing Plaintiffs and the trial court come up with subclasses serves to emphasize my point: Plaintiffs were misjoined in the first place.
The majority calls this case a mass action rather than a class action, and says its decision is without prejudice as to whether CAFA applies. (Maj. opn, ante, at p. 255.) As I said at the beginning, the term “mass action” is found in CAFA, and mass actions are not recognized in the Code of Civil Procedure. A mass action is by definition a class action made removable to federal court. (28 U.S.C. § 1332(d)(ll).) If Plaintiffs’ lawsuit is a mass action under CAFA, then Defendants, who, like Plaintiffs, are represented by skilled and experienced counsel, have chosen, for whatever reason, not to remove it. In any event, Plaintiffs’ lawsuit might not be a mass action because the Complaint alleges that all of the claims in the action arose from “an event or occurrence” within the State of California and that Plaintiffs suffered their injuries in this state. (28 U.S.C. § 1332(d)(ll)(B)(ii)(I).)
Finally, the majority seeks to offer the trial court help in managing this litigation behemoth by reminding the court of its inherent power to control the order of issues to be tried, to supervise and control litigation, and to conserve judicial resources. (Maj. opn., ante, at pp. 254-255 & fn. 20.) I am sure the trial judge, who is an excellent and respected jurist, was well aware of those powers and the need to conserve judicial resources, and considered them when sustaining the demurrer for misjoinder. In any event, the claims have been misjoined under section 378(a)(1) for all the reasons I have discussed and the majority opinion is in conflict with many opinions facing the identical issues.
Affirming the judgment of dismissal would not leave Plaintiffs without recourse or recompense. Each Plaintiff can pursue his or her own lawsuit for fraud, negligent misrepresentation, and, as the case may be, wrongful foreclosure. In addition, the Complaint alleges a cause of action for unfair competition in violation of California’s unfair competition law, Business and Professions Code section 17200 et seq., based on the allegations that Defendants engaged in a massive conspiracy and fraudulent scheme to place borrowers into loans for which they were unsuited, to securitize and sell those loans on the secondary market, and to artificially inflate real estate prices in California. Business and Professions Code section 17203 permits recovery of *277 restitution without individualized proof of deception, reliance, and injury. (People ex rel. Harris v. Sarpas (2014) 225 Cal.App.4th 1539, 1548 [172 Cal.Rptr.3d 25].)
Respondents’ petition for review by the Supreme Court was denied March 25, 2015, S223941. Chin, J., did not participate therein.

 According to defendants Bank of America, N.A. (B of A), Bank of America Corporation, Countrywide Financial Corporation (Countrywide), Countrywide Home Loans, Inc. (Countrywide Home Loans), ReconTrust Company, N.A., CTC Real Estate Services, and LandSafe, Inc. (collectively, Defendants), 818 out of 964 dismissed plaintiffs appealed. I refer to the 818 appellants as Appealing Plaintiffs and refer to all plaintiffs named in the third amended complaint, including those who did not join in this appeal, as Plaintiffs.

 A “mass action” is deemed to be a class action removable to federal court if it meets specified requirements. (28 U.S.C. § 1332(d)(ll)(A).)

 In full, Code of Civil Procedure section 378 states: “(a) All persons may join in one action as plaintiffs if: Q] (1) They assert any right to relief jointly, severally, or in the alternative, in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action; or Q] (2) They have a claim, right, or interest adverse to the defendant in the property or controversy which is the subject of the action, [¶] (b) It is not necessary that each plaintiff be interested as to every cause of action or as to all relief prayed for. Judgment may be given for one or more of the plaintiffs according to their respective right to relief.”

 Damages are not available for the unfair competition cause of action. (Cortez v. Purolator Air Filtration Products Co. (2000) 23 Cal.4th 163, 173 [96 Cal.Rptr.2d 518, 999 P.2d 706].)